**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| MICHELLE JINKS, individually and on behalf of all others similarly situated, | Case No.: 4:25-cv-01277-ALM |
| Plaintiff, | |
| v. | |
| MARQUIS SOFTWARE SOLUTIONS, INC., | |
| Defendant. | |

| | |
|---|---|
| CHRISTOPHER RAUCCI, individually and on behalf of all others similarly situated, | Case No.: 4:25-cv-01280-ALM |
| Plaintiff, | |
| v. | |
| MARQUIS SOFTWARE SOLUTIONS, INC., | |
| Defendant. | |

| | |
|---|---|
| SALLY SIMMERING, individually and on behalf of all others similarly situated, | Case No.: 4:25-cv-01281-ALM |
| Plaintiff, | |
| v. | |
| NORWAY SAVINGS BANK and MARQUIS SOFTWARE SOLUTIONS, INC., | |
| Defendants. | |

LARRY DOMENICHELLO, individually and
on behalf of all others similarly situated,

        Plaintiff,

     v.

MARQUIS SOFTWARE SOLUTIONS, INC.,

        Defendant.

Case No.: 4:25-cv-01284-ALM

---

DANIEL HART, individually and on behalf of
all others similarly situated,

        Plaintiff,

     v.

MARQUIS SOFTWARE SOLUTIONS, INC.
and NORWAY SAVINGS BANK,

        Defendants.

Case No.: 4:25-cv-01285-MJT

---

DAVID ROBINSON SR., individually and on
behalf of all others similarly situated,

        Plaintiff,

     v.

MARQUIS SOFTWARE SOLUTIONS, INC.
and NORWAY SAVINGS BANK,

        Defendants.

Case No.: 4:25-cv-01306-JCB

---

JOSHUA GEOFFREY., individually and on
behalf of all others similarly situated,

        Plaintiff,

     v.

MARQUIS SOFTWARE SOLUTIONS, INC.
and NORWAY SAVINGS BANK,

        Defendants.

Case No.: 4:25-cv-01311-ALM

| | |
|---|---|
| TRACY CUSICK, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>MARQUIS SOFTWARE SOLUTIONS, INC. and NORWAY SAVINGS BANK,<br><br>          Defendants. | Case No.: 4:25-cv-01314-ALM |
| JESSICA BOUTOT, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>MARQUIS SOFTWARE SOLUTIONS, INC. and NORWAY SAVINGS BANK,<br><br>          Defendants. | Case No.: 4:25-cv-01321-ALM |
| MICHAELA BROWN, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>MARQUIS SOFTWARE SOLUTIONS, INC. and COVENTAGE CREDIT UNION,<br><br>          Defendants. | Case No.: 4:25-cv-01322-JDK |
| LAWRENCE SPOHRLEDER, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>MARQUIS SOFTWARE SOLUTIONS, INC. and NORWAY SAVINGS BANK,<br><br>          Defendants. | Case No.: 4:25-cv-01323-ALM |

WILLIAM ANDERSON, individually and on behalf of all others similarly situated,

        Plaintiff,

    v.

MARQUIS SOFTWARE SOLUTIONS, INC. and SUNCOAST CREDIT UNION,

        Defendants.

Case No.: 4:25-cv-01328-ALM

---

CHRISTINA ANSTETT, individually and on behalf of all others similarly situated,

        Plaintiff,

    v.

MARQUIS SOFTWARE SOLUTIONS, INC. and SUNCOAST CREDIT UNION,

        Defendants.

Case No.: 4:25-cv-01334-JCB

---

LEAH ERBAN, individually and on behalf of all others similarly situated,

        Plaintiff,

    v.

MARQUIS SOFTWARE SOLUTIONS, INC. and GESA CREDIT UNION,

        Defendants.

Case No.: 4:25-cv-01341-ALM

---

NELLIE RAYMOND, individually and on behalf of all others similarly situated,

        Plaintiff,

    v.

MARQUIS SOFTWARE SOLUTIONS, INC. and MAINE STATE CREDIT UNION,

        Defendants.

Case No.: 4:25-cv-01344-ALM

### PLAINTIFFS' JOINT MOTION TO CONSOLIDATE ACTIONS, APPOINT INTERIM CLASS COUNSEL, AND SET DEADLINE FOR FILING OF CONSOLIDATED COMPLAINT

Plaintiffs, Michelle Jinks, Christopher Raucci, Larry Domenichello, Daniel Hart, David Robinson Sr., Joshua Geoffrey, Tracy Cusick, Jessica Boutot, Michaela Brown, Lawrence Spohrleder, William Anderson, Christina Anstett, Leah Erban, and Nellie Raymond ("Plaintiffs") move jointly for the following relief pursuant to Fed. R. Civ. P. 23(g)(3) and 42(a): (1) consolidation of the above-captioned cases into the first-filed *Jinks* action, as well as any other future actions filed or transferred related actions against Defendants Marquis Software Solutions, Inc., Norway Savings Bank, Coventage Credit Union, Suncoast Credit Union, GESA Credit Union, and Maine State Credit Union (collectively "Related Actions") under the new case style: "*In re Marquis Software Solutions, Inc. Data Breach Litigation*"; (2) appointment of Mark Lanier of the Lanier Law Firm, Jeff Ostrow of Kopelowitz Ostrow P.A., and Gary Klinger of Milberg PLLC as Interim Co-Lead Class Counsel, and Joe Kendall of Kendall Law Group, PLLC as liaison counsel (collectively "Proposed Interim Class Counsel") as well as an Executive Committee consisting of Raina Borrelli of Strauss Borrelli PLLC, Jonathan Mann of Pittman, Dutton, Hellmus, Bradley & Mann, P.C., Tom Loeser of Cotchett, Pitre & McCarthy, LLP, Paul Doolittle of Poulin Willey Anastopoulo LLC, Leigh Montgomery of Ellzey Kherkher Sanford Montgomery, LLP, Andrew Shamis of Shamis & Gentile P.A., Israel David of Israel David LLC, Mark Reich of Levi & Korsinsky, LLP, Jean Martin of Morgan & Morgan, and Shauna Itri of Seeger Weiss LLP; (3) a stay of the Related Actions, including Defendants' responsive pleading deadlines, and (4) to set a schedule, allowing Plaintiffs to file a Consolidated Complaint within 60 days after the Court grants

1

this motion and appoints Interim Class Counsel.[1]

## I. INTRODUCTION

This is a large and complex data breach class action involving several current Defendants and likely dozens, if not hundreds, more. Plaintiffs seek to hold Defendants, and those later included, liable for their unlawful disclosure of the highly sensitive personally identifiable information ("PII") of their customers or clients' customers in a large and preventable data breach that occurred on or about August 14, 2025 ("Data Breach"). As a result of Defendants' failure to keep Plaintiffs' and the putative class members' PII secure and confidential, 15 class action lawsuits were filed in the United States District Court for the Eastern District of Texas: *Jinks v. Marquis Software Sols., Inc.*, No. 4:25-cv-01277; *Raucci v. Marquis Software Sols., Inc.*, No. 4:25-cv-01280; *Simmering v. Norway Savings Bank and Marquis Software Sols., Inc.*, No. 4:25-cv-01281; *Domenichello v. Marquis Software Sols., Inc.*, No. 4:25-cv-01284; *Hart v. Marquis Software Sols., Inc. and Norway Savings Bank*, No. 4:25-cv-01285; *Robinson Sr. v. Marquis Software Sols., Inc. and Norway Savings Bank*, No. 4:25-cv-01306; *Geoffrey v. Norway Savings Bank and Marquis Software Sols., Inc.*, No. 4:25-cv-01311; *Cusick v. Norway Savings Bank and Marquis Software Sols., Inc.*, No. 4:25-cv-01314; *Boutot v. Norway Savings Bank and Marquis Software Sols., Inc.*, No. 4:25-cv-01321; *Brown v. Marquis Software Sols., Inc. and Coventage Credit Union*, No. 4:25-cv-01322; *Spohrleder v. Norway Savings Bank and Marquis Software*

---

[1] There are 15 Related Cases (as defined in the next paragraph). Of the 15 cases, 12 fully support this motion. Plaintiffs Brown and Anstett, who filed two separate cases and are represented by the same counsel, support consolidation and the setting of a schedule to file the consolidated complaint, but do not support the motion for appointment of leadership. Their counsel was offered an Executive Committee position, but he declined. Proposed Interim Co-Lead Counsel reached out to counsel for Plaintiff Simmering in *Simmering v. Norway Savings Bank and Marquis Software Sols., Inc.*, No. 4:25-cv-01281, regarding counsel's position with respect to the motion and to likewise offer an Executive Committee position, however, counsel did not respond by the time of the filing of this motion.

*Sols., Inc.*, No. 4:25-cv-01323; *Anderson v. Marquis Software Sols., Inc. and Suncoast Credit Union*, No. 4:25-cv-01328; *Anstett v. Marquis Software Sols., Inc. and Suncoast Credit Union*, No. 4:25-cv-01334; *Erban v. Marquis Software Sols., Inc. and GESA Credit Union*, No. 4:25-cv-01341; and *Raymond v. Marquis Software Sols., Inc. and Maine State Credit Union*, No. 4:25-cv-01344 (collectively, "Related Actions"). The Related Actions allege common issues of law and fact and seek relief on behalf of overlapping classes. Accordingly, to preserve party and judicial resources and prevent duplication of effort and the risk of inconsistent rulings, these actions are appropriate for consolidation.

In addition, as set forth below, Proposed Interim Class Counsel meets the requirements of Fed. R. Civ. P. 23(g)(3), is highly qualified to lead this action, and will efficiently and effectively lead this action for the benefit of all class members.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Defendants' data security failures allowed a targeted cyberattack to compromise Defendants' network that, upon information and belief, contained the PII of Plaintiffs and other individuals ("Class"), including Plaintiffs' and Class Members' full names, addresses, dates of birth, social security numbers, tax identification numbers, financial account information, and other sensitive data. The Data Breach occurred on or about August 14, 2025. Defendants began sending Notice Letters advising Plaintiffs and the Class of the Data Breach in or around early November 2025.

Following the dissemination of the notice letters, 15 Related Actions have thus far been filed in the United States District Court for the Eastern District of Texas against Defendants, each seeking to redress the harm caused by the Data Breach. The Related Actions all focus on the same factual predicate—the Data Breach—and contain nearly identical allegations and claims for relief.

## III.    THE ACTIONS SHOULD BE CONSOLIDATED BEFORE THIS COURT.

Due to the similarity of the Related Actions, consolidation is appropriate. Each lawsuit arises from the same common set of operative facts—the Data Breach. Due to each Plaintiffs' reliance on the same set of operative facts, Plaintiffs assert overlapping claims, on behalf of similarly defined classes, seeking similar relief. Plaintiffs in all Related Actions support consolidation. The above-captioned cases, the parties thereto, and the Court will be best served in a consolidated proceeding.

### A.    Legal Standard for Consolidation

Federal Rule of Civil Procedure 42(a) provides:

> If actions before the court involve a common question of law *or* fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

(emphasis added). "Rule 42(a) provides district courts with broad authority to consolidate actions that 'involve a common question of law or fact.'" *Luera v. M/V Alberta*, 635 F.3d 181, 194 (5th Cir. 2011) (quoting Fed. R. Civ. P. 42(a)); *see also In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977) ("The trial court's managerial power is especially strong and flexible in matters of consolidation.").

"The purpose of consolidation is to permit trial convenience and economy in administration." *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d at 1014 (citation omitted). Accordingly, "district judges have been urged to make good use of Rule 42(a) in order to expedite the trial and eliminate unnecessary repetition and confusion." *Id.* at 1013 (citation, quotations, and alterations omitted); *see also St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. 1983) ("Consolidating actions in a district court is proper when the cases involve common questions of law and fact, and the district judge finds that it would avoid unnecessary costs or delay.").

The following factors are pertinent to the decision of whether to consolidate actions:

> (1) whether the actions are pending before the same court; (2) whether the actions involve a common party; (3) any risk of prejudice or confusion from consolidation; (4) the risk of inconsistent adjudications of common factual or legal questions if the matters are tried separately; (5) whether consolidation will reduce the time and cost of trying the cases separately; and (6) whether the cases are at the same stage of preparation for trial.

*Bayati v. GWG Holdings, Inc.*, No. 3:22-CV-0410-B, 2023 WL 5925880, at *2 (N.D. Tex. Sept. 12, 2023).

## B.    Argument and Authorities

Each Related Action involves common questions of law and fact, and all relevant factors weigh in favor of consolidation, which will promote efficiency and uniformity without prejudicing any party. The Court should therefore consolidate all Related Actions with this first-filed case.

All Related Actions involve common factual and legal questions as they arise from the same occurrence: the Data Breach. Courts have routinely recognized that consolidation is appropriate where multiple actions arise from the same data breach event. *See, e.g.*, *Lockhart v. El Centro Del Barrio*, No. SA-23-CV-01156-JKP, 2024 WL 303253, at *2 (W.D. Tex. Jan. 25, 2024) (finding consolidation appropriate because "Plaintiffs are all patients of Defendant asserting causes of action based on the same data breach resulting from the same cyberattack"); *Kaplan v. 21st Century Oncology Holdings*, No. 2:16-cv-210, 2016 WL 9383330, at *2 (M.D. Fla. July 21, 2016) ("it is clear that common questions of law and fact permeate these cases [because] . . . all of the cases appear to arise from the same alleged" data privacy incident).

Because all Related Actions are filed in this District, the first factor guiding the Court's analysis weighs in favor of consolidation. *See U.S. ex rel Frey v. Health Mgmt. Sys., Inc.*, No. 3:19-cv-1141-B, 2021 WL 9145414, at *2 (N.D. Tex. Mar. 15, 2021) (first factor satisfied when "the cases are pending in the same court"); *Zolezzi v. Celadon Trucking Servs., Inc.*, No. CIV.A.H-

08-3508, 2009 WL 736057, at *1 (S.D. Tex. Mar. 16, 2009) (first factor satisfied where both actions filed in same district and division).

The second factor is likewise satisfied because all Related Actions are against Defendants and seek to certify national classes of similarly situated individuals whose PII was compromised in the Data Breach. *See Lockhart*, 2024 WL 303253, at *2 (fact that all cases filed on behalf of same class of data breach victims against same defendant supports consolidation); *Bayati*, 2023 WL 5925880, at *2 (consolidating actions filed on behalf of same proposed class against same defendant); *Arnold & Co., LLC v. David K. Young Consulting, LLC*, No. SA-13-CV-00146-DAE, 2013 WL 1411773, at *2 (W.D. Tex. Apr. 8, 2013) (ordering consolidation where "[b]oth cases involve essentially the same parties").

The third and fourth factors favor consolidation as well. On one hand, trying the Related Actions separately would risk inconsistent findings and rulings in each case arising from the same Data Breach, brought on behalf of the same putative class of individuals affected, against the same Defendants. *See Lockhart*, 2024 WL 303253, at *2 (finding that "[c]onsolidation will ensure consistent rulings and promote judicial economy" where three cases asserted "causes of action based on the same data breach resulting from the same cyberattack"); *JFP Servs., L.L.C. v. Torans*, No. SA-17-CV-00210-FB, 2017 WL 9362704, at *2 (W.D. Tex. Dec. 21, 2017) ("In light of these common questions of law and fact, the Court finds there is a risk of inconsistent adjudication if the Court were to allow these cases to be tried separately before different judges[.]"). On the other hand, "[a]ny prejudice to the parties flowing from the consolidation would be minimal in comparison to these considerations." *Id.*; *see also Stoneeagle Servs., Inc. v. Gillman*, No. 3:11-CV-02408-P, 2014 WL 12577069, at *3 (N.D. Tex. Jan. 28, 2014) ("Given the substantial similarities among the facts and causes of action, the prospect of confusion incumbent on the fact

finder will be nominal at best because these cases tell the same story[.]"); *Zolezzi*, 2009 WL 736057, at *2 ("[T]he court finds that the risk of prejudice or confusion if the cases are consolidated is minimal. This risk is, therefore, outweighed by the risk of inconsistent judgments should the cases be tried separately.").

Regarding the fifth factor, consolidating the Related Actions will certainly reduce the time and costs for all involved by eliminating the need for separate filings, discovery, settlement negotiations, hearings, and trials for the ten cases arising from the same Data Breach, involving the same Defendants and putative classes, and presenting the same factual and legal issues. This factor thus weighs in favor of consolidation. *See Bayati*, 2023 WL 5925880, at *2 (where two actions "make nearly identical legal claims based on the same set of facts," and were "filed on behalf of the same proposed class," consolidation "would therefore promote judicial efficiency"); *Gate Guard Servs. L.P. v. Solis*, No. CIV.A. V-10-91, 2011 WL 2784447, at *15 (S.D. Tex. July 12, 2011) (ordering consolidation where "the same factual and legal issues exist in both cases and consolidating the actions would be more efficient than litigating the two cases separately").

Finally, because all Related Actions are at the same early procedural stage—complaints are filed, but there have been no responsive pleadings, and no scheduling orders have been entered—the sixth factor weighs in favor of consolidation. *See Doe (S.M.A.) v. Salesforce, Inc*., No. 3:23-CV-1040-B, 2023 WL 4108845, at *2 (N.D. Tex. June 20, 2023) (granting consolidation where cases at the same pre-trial stage); *Arnold & Co.*, 2013 WL 1411773, at *2 (ordering consolidation where "the cases were filed less than one month apart, no dispositive motions have been filed in either case, and very little discovery has occurred"); *Gabriel v. OneWest Bank FSB*, No. CIV.A. H-11-3356, 2012 WL 1158732, at *1 (S.D. Tex. Apr. 5, 2012) (ordering consolidation where "[n]either case has been set on schedule yet, so the litigation is at the same stage in both");

*Zolezzi*, 2009 WL 736057, at *2 (ordering consolidation where "both actions are at the early stages of litigation").

Accordingly, because all factors weigh in favor of consolidation, consolidating the Related Actions "is not only appropriate, but would promote this Court's judicial efficiency and economy and would tend to avoid unnecessary costs or delay." *Mayfield v. American Auto Ins. Co.*, 2003 WL 21250935, at *2 (N.D.TX 2003). The Court should therefore consolidate the Related Actions into this first-filed case.

## IV.    PROPOSED INTERIM CLASS COUNSEL MEET THE REQUIREMENTS OF RULE 23(G).

### A.    Legal Standard for Appointment of Interim Class Counsel

Rule 23(g)(3) explicitly permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." MANUAL FOR COMPLEX LITIGATION ("MCL") § 21.11 (4th ed. 2004).

When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Fed. R. Civ. P. 23(g)(1)(A). *See Kjessler v. Zaappaaz, Inc.*, No. 4:17-CV-3064, 2018 WL 8755737, at *3 (S.D. Tex. Aug. 31, 2018) (citing *Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008).) Under the rule, a court appointing class counsel must evaluate whether the proposed counsel will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(2), (4). In doing so, a court must consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii)

counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A), (2). A court, in its discretion, also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

**B.      Appointment of Interim Class Counsel is Appropriate.**

Proposed Interim Class Counsel and proposed liaison counsel satisfy all the requirements for appointment by the Court under Fed. R. Civ. P. 23(g)(3). The attorneys and their firms have successfully litigated numerous class actions involving privacy claims on behalf of hundreds of millions of consumers. Proposed Interim Class Counsel possesses the necessary resources to prosecute this litigation, has the support of the Plaintiffs from each of the cases on file, and will continue to work to manage this litigation effectively and efficiently. Because Proposed Interim Class Counsel has the case-management and complex-litigation skills, experience, knowledge of the relevant facts and legal issues, support of Plaintiffs from 12 of the 15 Related Actions, and the extensive resources needed to efficiently prosecute this action on behalf of putative class members, the Court should grant Plaintiffs' motion. Proposed Interim Class Counsel work, experience, knowledge, resources, and successful track record litigating consumer data breach cases demonstrate that they are superbly qualified to represent the Proposed Class' interests under the factors enumerated in Fed. R. Civ. P. 23.

**a.      Proposed Interim Class Counsel Have Performed Substantial Work Investigating and Litigating the Claims to Date.**

One factor courts consider is the work and resources counsel expend investigating the claims being asserted when appointing lead counsel. *See, e.g., Adedipe v. U.S. Bank, Nat. Ass'n*, No. CIV. 13-2687 JNE/JJK, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing interim

class counsel because they "devoted the more substantial effort towards pre-suit investigation and identification of claims"); *In re IndyMac ERISA Litig.*, No. CV0804579DDPVBKX, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) (same).

Here, immediately after the public announcement of the Data Breach, Proposed Interim Class Counsel began investigating potential legal claims and remedies for the victims of the breach. That investigation included, among other things: investigating the facts surrounding the Data Breach; interviewing numerous consumers injured by the Data Breach; researching legal claims; consulting with potential liability and damage experts; drafting initial pleadings; and organizing Plaintiffs and their counsel and discussing consolidating the relevant actions for unified proceedings and preparing the consolidation and proposed leadership papers.

Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Class Counsel under Fed. R. Civ. P. 23(g)(3), as Proposed Interim Class Counsel are organized, unified, and committed to working together for the best interests of the class. *Dependable Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-CV-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 2018) (selecting interim counsel based on the effort expended to investigate the claims and the resources available to prosecute the litigation).

### b. Proposed Leadership Counsel Possess the Necessary Experience, Skill, and Knowledge of the Law to Prosecute this Litigation.

A primary factor in selecting interim counsel is experience, skill, knowledge, and familiarity with the relevant law. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, No. 22-CV-03580-WHO, 2022 WL 18399978, at *2 (N.D. Cal. Dec. 21, 2022). As demonstrated below, Proposed Interim Class Counsel and Proposed Local Counsel substantial data breach class-action experience, resources, and knowledge that will undoubtedly benefit the putative class as this litigation proceeds.

***Mark Lanier of the Lanier Law Firm***

W. Mark Lanier has established himself as one of America's most formidable trial attorneys over a career spanning more than three decades. Mark has secured billions in verdicts and settlements, reshaping the landscape of pharmaceutical liability, medical device litigation, and mass torts while earning international recognition for his innovative trial techniques and compelling courtroom presence.

Mark is the Lanier Law Firm's ("LLF") lead litigation counsel. He received his J.D. from Texas Tech University School of Law in 1984 and immediately began working at Fulbright and Jaworski (now Norton Rose Fulbright). In 1990, Mark founded LLF, and it has grown to over 60 lawyers with great diversity in all areas (gender, race, age, etc.), which enriches our approach and work in any litigation. Our lawyers include Professor Arthur Miller, co-author of the Wright & Miller Federal Practice and Procedures Manual.

As LLF's lead litigation counsel, Mark has tried a range of cases in federal and state forums coast to coast, including class and mass actions, with verdicts from tried cases approaching $20 billion. Currently Mark is lead and liaison counsel in the AT&T Data Breach MDL (N.D. Tex) before the Honorable Ada Brown. In addition, Mark's mass tort experience includes roles as lead or co-lead counsel in multiple multidistrict litigations, including: including APAP litigation (Judge Denise Cote, S.D.N.Y.), Pinnacle Hip litigation (Judge Ed Kinkeade, N.D. Tex.), Google Anti-trust litigation (Judge Kevin Castel, S.D.N.Y.), Biomet hip, and Avandia litigation, as well as serving as lead trial counsel in the National Prescription Opiate litigation (Judge Dan Polster, N.D. Ohio). These appointments reflect the legal community's trust in Mark's ability to handle complex, multi-faceted litigation. LLF has also been appointed to dozens of MDL and state coordinated proceedings.

Mark is frequently invited to speak at annual conferences for MDL judges. Along with Richard Arsenault, Mark developed and maintains the annual MDL Judicial Summit in Aspen, Colorado. Along with speaking at over a dozen other CLE conferences annually, Mark singularly teaches a 3-day Trial Academy for plaintiff attorneys with regular attendance over 1,000 attorneys. Mark teaches all 22 hours of his Trial Academy for plaintiff lawyers each summer spanning three days. With attendance over 1,000, it gives him a chance to interact and network with lawyers from all 50 states. Additionally, Mark speaks at over a dozen other CLE's annually. Mark has also presented at the Fifth Circuit Judicial Conference and many Bench Bar conferences.

Mark works to have a cooperative and consensus-built, team approach, internally in his firm as well as in MDL's. Through his firm, Mark invests all the necessary time, labor, and money to prosecute firm cases, with all cases being self-funded. Mark has tried a huge number of cases, with 13 that stretched into three months. Mark tried four cases to conclusion in the Pinnacle MDL, which required a ten-million-dollar investment over ten years. Mark works collaboratively through a team-based approach, both internally within the Lanier Law Firm and across the broader MDL structure. Working cooperatively and obtaining consensus is important to him. With offices in New York, Houston, Los Angeles, and Puerto Rico, Mark has the opportunity to co-counsel with attorneys around the country and abroad.

Mark believes this consolidated action will profit from a structure with three co-lead counsel from whose firms teams will be created in areas of discovery, briefing, settlement, common benefit fee monitoring, and trial preparation.

Today, while based in Houston where he lives with his wife Becky and serves as father to five children, Mark continues to lead his national law firm. His practice represents clients from around the world in courtrooms across the United States, maintaining his reputation for taking on

and winning complex, high-stakes litigation while never losing sight of his commitment to justice and his clients' needs. In the MDL or consolidated action landscape, any judge before whom Mark has appeared can reference what he brings to the table when tapped to lead or participate in any capacity. A copy of Mr. Lanier's firm resume is attached hereto as **Exhibit A**.

### *Jeff Ostrow of Kopelowitz Ostrow P.A.*

Jeff Ostrow is the Managing Partner of KO and has been practicing law for 28 years. Mr. Ostrow established the South Florida-based firm immediately following his graduation from Nova Southeastern University in 1997 and has since grown it to 30 attorneys.

Beyond managing the firm, Mr. Ostrow heads the class action department and maintains a full caseload of nationwide class actions. Although Mr. Ostrow currently only represents class plaintiffs, he has prior experience defending large companies in class actions, including banks, commercial lenders, and tech companies, which affords him a valuable perspective and advantage in litigation and settlement.

Mr. Ostrow manages one of the largest privacy groups in the nation. He is currently Lead Counsel in MDL-3090, *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-md-3090 (S.D. Fla.), which involves 10 defendants and 6 million people. Additional examples of other cases in which he serves as Lead Counsel include: *Crowe v. Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.), affecting eight million individuals; *In re Zeroed-In Techs., LLC Data Breach Litig.*, No. 1:23-cv-03284-BAH (D. Md.), affecting two million individuals, *Harrell v. WebTPA Employer Servs. LLC*, No. 3:24-cv-01160 (N.D. Tex.), affecting 2.5 million individuals; *Stallone v. Fin. Bus. & Consumer Sols., Inc.*, No. 2:24-cv-01876 (E.D. Pa.), affecting almost two million individuals; *Gambino v. Berry, Dunn, Mcneil & Parker LLC*, 2:24-cv-146 (D. Me.), affecting 1.1 million individuals; *Mclean v. Signature Performance, Inc.*, No. 8:24-cv-230 (D.

Neb.), affecting at least 106,540 patients; *Wilson v. Frontier Comm'ns Parent, Inc.*, No. 3:23-CV-01418-L (N.D. Tex.), affecting at least 750,000 individuals; *Flores v. S. Tex. Oncology & Hematology, PLLC*, No. 2024CI13299 (Tex. Dist. Ct., Bexar Cty.), affecting 176,303 patients; *In re HealthEquity, Inc. Data Sec. Incident Litig.*, No. 2:24-cv-528 (D. Utah), affecting 4.3 million patients; *Griffiths v. Kootenai Health, Inc.*, No. 2:24-cv-205 (D. Idaho), affecting 827,149 patients, and *Butler v. Acadian Ambulance Serv.*, *Inc.*, No. 6:24-cv-01011 (W.D. La.), affecting 3 million patients.

For about 13 years, Mr. Ostrow's firm served as Coordinating Counsel, Settlement Class Counsel, and Lead Class Counsel in *In re Checking Acct. Overdraft Litigation*, No. 1:09-MD-02036-JLK (S.D. Fla.), a large MDL that resulted in the recovery of $1.2 billion from the nation's largest banks, and is Liaison Counsel in *In re Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-2626-HES-JRK (M.D. Fla.), an antitrust class action with $85 million recovered to date. Moreover, KO is co-counsel for Broward County and the City of Fort Lauderdale in *In re: National Prescription Opiate Litigation*, No. 1:17-md-2804 (N.D. Ohio), and for the Broward and Miami-Dade County School Boards in *In re Juul Labs*, No. 19-md-2913 (N.D. Cal.), helping clients recover $100 million and $26 million, respectively.

Federal judges have recognized Mr. Ostrow's commitment to excellence. In *Farrell v. Bank of America*, *N.A.*, 327 F.R.D. 422, 432 (S.D. Cal. 2018), in which Mr. Ostrow served as lead counsel on behalf of millions of people, United States District Judge James Lorenz made the following observation when granting final approval of a settlement that included a $68 million recovery and $1.2 billion in injunctive relief requiring the defendant bank to stop an enormously lucrative practice:

> Class Counsel achieved this result through tenacity and great skill. In all of their written submissions and in their presentation at the Final Approval Hearing, Class

Counsel's arguments were laudably clear and precise, no small feat given the complexity of the legal questions at issue here. It is clear that substantial preparation went into all of Class Counsel's work on this case.

Similarly, when approving a $13 million settlement in which Mr. Ostrow was one of the lead counsel, United States District Judge James Lawrence King commented that "Class Counsel's efforts in pursing and settling these consumer claims were, quite simply, outstanding." *In re Checking Account Overdraft Litig.*, 1:09-md-02036-JLK, 2013 WL 11319244, *16 (S.D. Fla. Aug. 2, 2013). In another recent case in which Mr. Ostrow was lead counsel, United States District Judge Jose Martinez noted, "Here, Class Counsel worked extensively and with a high level of skill to advance Plaintiff's claims . . . The case involved difficult factual and legal issues from a global pandemic. . . . Despite the strong defenses presented by Barry [University], Class Counsel obtained an excellent result for the Settlement Class Members." *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.), ECF No. 84 at 14.

Mr. Ostrow has worked productively with Proposed Interim Co-Lead Class Counsel in many other cases. He is confident that this proposed leadership structure will result in an excellent recovery for all clients and Class Members. A copy of Mr. Ostrow's firm resume is attached hereto as **Exhibit B**.

*Gary M. Klinger of Milberg, PLLC*

Mr. Klinger is a Senior Partner at Milberg, PLLC ("Milberg") and Chair of its Cybersecurity and Data Privacy Practice Group. Mr. Klinger is recognized as one of the most respected data privacy attorneys in the United States, having been ranked by Chambers and Partners as Band 3 for Privacy & Data Security Litigation (2024)[2] and having been selected to

---

[2] Only three plaintiffs' lawyers in the country received the distinction of being ranked by Chambers and Partners for Privacy & Data Security Litigation.

Lawdragon's 500 Leading Litigators in America for his accomplishments in privacy litigation (2024).[3] Law360 recently highlighted Mr. Klinger's work in the privacy space.[4]

Mr. Klinger has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country. *See, e.g., In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Mr. Klinger was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers); *Isaiah v. LoanDepot, Inc.*, 8:24-cv-00136-DOC-JCE (C.D. Cal) (where Mr. Klinger was appointed co-lead counsel in a data breach that impacted 17 million consumers). Mr. Klinger and his firm have played an important role in developing the favorable case law that many plaintiffs rely on in the data breach space. *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *Flores v. Aon Corp.*, 2023 IL App. (1st) (230140) (where Mr. Klinger obtained reversal of a dismissal with prejudice in a data breach class action); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

Mr. Klinger has settled on a classwide basis more than 200 class actions involving privacy

---

[3]*See*                                    https://chambers.com/lawyer/gary-klinger-usa-5:26875006; https://www.lawdragon.com/guides/2023-09-08-the-2024-lawdragon-500-leading-litigators-in-america.

[4] https://www.law360.com/articles/1854005/rising-star-milberg-s-gary-klinger.

violations, the majority of which are data breaches, in state and federal courts across the country as lead or co-lead counsel. To his knowledge, no other attorney in the country has settled and won court approval of more data breach class actions. Representative cases include: *Parris, et al., v. Meta Platforms, Inc.*, Case No.2023LA000672 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger serves as lead counsel and obtained a settlement of $64.5 million for 4 million consumers in a privacy class action); *Owens v. MGM Resorts Int'l*, 2:23-cv-01480-RFB-MDC (D. Nev.) (where Mr. Klinger served as lead counsel and obtained a settlement of $45 million for millions of consumers in a privacy class action); *Boone v. Snap, Inc.*, Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $35 million for 3 million consumers in a privacy class action); *In re: East Palestine Train Derailment*, No. 23-cv-00242 (N.D. Ohio) (where Mr. Klinger serves on the leadership team that obtained a settlement of $600 million in a complex class action).[5]

Mr. Klinger also has the full weight of his law firm behind him. Since its founding in 1965, Milberg has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements. Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court. [6] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of large-scale

---

[5] Mr. Klinger has also successfully litigated contested class actions through class certification. *See, e.g.*, *Sewall v. Home Partners Holdings LLC*, No. A23-1662, 2024 WL 64318, at *1 (Minn. Ct. App. Jan. 2, 2024) (denying interlocutory review to an order granting class certification to a class of lessees in a landlord-tenant dispute); *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. 2018) (where Mr. Klinger certified, over objection, a nationwide privacy class action involving more than one million class members; the case ultimately settled for $6.5 million).
[6] *See* https://milberg.com/precedent-setting-decisions/page/3/.

wrongdoing. Milberg has been described by the New York Times as "[a] powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."[7]

Milberg is one of the largest plaintiffs' class action firms in the United States (and abroad). The firm currently is involved in some of the largest and well-known class action cases in the country and is particularly active in the field of data breach and privacy litigation. The firm is comprised of dozens of attorneys who work from offices across the United States and Europe. Milberg attorneys come from diverse backgrounds and reflect the diversity of the bar and the classes they seek to represent—from the standpoint of age, gender, experience, and geographic location.[8] A copy of Mr. Klinger's firm resume is attached hereto as **Exhibit C**.

### Joe Kendall of Kendall Law Group, PLLC

Former United States District Judge Joe Kendall is the owner of Kendall Law Group. Mr. Kendall served on the federal bench in the Northern District of Texas from 1992-2002, appointed by President George Herbert Walker Bush. He was unanimously confirmed by the U.S. Senate. At the time of his appointment, he was the youngest U.S. District Judge in the country. He also served as state district judge of the 195th Judicial District Court in Dallas from 1987-1992. In his judicial career, he has presided over approximately 500 jury trials and disposed of over 11,000 cases. Mr.

---

[7] Sam Roberts, *Melvyn Weiss, Lawyer Who Fought Corporate Fraud, Dies at 82*, N.Y. TIMES, (Feb. 5, 2018), https://www.nytimes.com/2018/02/05/obituaries/melvyn-weiss-lawyer-who-fought-corporate-fraud-dies-at-82.html.

[8] *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45-46 (2d ed. 2018), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf ("Duke Guidelines") ("The judge's primary responsibility in the selection process is to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds.").

Kendall has a B.B.A. from the Cox School of Business at Southern Methodist University and a law degree from Baylor University. Mr. Kendall served as a Commissioner on the United States Sentencing Commission from 1999 through 2002, appointed by President Bill Clinton. Since leaving the bench for economic reasons and returning to trial work, Mr. Kendall has had tremendous success at the prosecution of patent and class action litigation either as lead, co-lead or local counsel.

While on the federal bench, Mr. Kendall handled class actions of various types and presided over numerous civil jury trials, including complex litigation, securities, antitrust, qui tam, medical malpractice, products liability, and patent infringement cases. He presided over a multi-district litigation case, and also environmental and CERCLA cases. He is the author of more than 250 judicial opinions published in the federal reporters or legal research databases. In his career as a lawyer, Mr. Kendall has personally tried more than 100 jury trials to judgment.

Additionally, Mr. Kendall taught new federal judges for the Federal Judicial Center in Washington, D.C. and has taught docket management techniques to experienced federal judges throughout the country. He is a former board member of the Federal Judges Association and was editor of *In Camera*, the newsletter of the Federal Judges Association. A copy of Mr. Kendall's firm resume is attached hereto as **Exhibit D**.

### *Executive Committee Members*

The Executive Committee will consist of Plaintiffs' counsel: Raina Borrelli of Strauss Borrelli PLLC, Jonathan Mann of Pittman, Dutton, Hellmus, Bradley & Mann, P.C., Tom Loeser of Cotchett, Pitre & McCarthy, LLP, Paul Doolittle of Poulin Willey Anastopoulo LLC , Leigh Montgomery of Ellzey Kherkher Sanford Montgomery, LLP, Andrew Shamis of Shamis & Gentile P.A., Israel David of Israel David LLC, Mark Reich of Levi & Korsinsky, LLP, Jean Martin of Morgan & Morgan, and Shauna Itri of Seeger Weiss LLP. The Executive Committee members are

well qualified to serve in this action.

### c. Proposed Interim Class Counsel Have and Will Continue to Devote Sufficient Resources to this Case.

The resources that Proposed Interim Class Counsel has already committed and will continue to commit to the case also strongly support their appointment. As demonstrated above, Proposed Interim Class Counsel and their firms' resources are not merely financial, but also include substantial expertise and work-product developed in other similar cases, which will benefit Plaintiffs and the putative class. Proposed Interim Class Counsel's ability to draw from this well-developed repository of information will also allow them to streamline the litigation.

### d. Additional Factors Supporting Formal Designation of Proposed Interim Class Counsel.

Plaintiffs and their counsels' support for the proposed leadership structure also weighs in favor of appointing the Proposed Interim Class Counsel. Notably, the proposed leadership structure has the support of the majority of the Plaintiffs and the law firms involved in the litigation. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel."); *see also In re Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17, 2018) (quoting *Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at *2 (S.D. Ohio June 14, 2011) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential attribute' for lead counsel.")); *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 U.S. Dist. LEXIS 164895, at *10 (N.D. Ill. May 30, 2020) ("And all Plaintiffs in this action have consented to the proposed leadership structure."); Manual for Complex Litigation §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272

(describing "private ordering" approach). Indeed, after their cases were filed, Proposed Interim Class Counsel moved quickly to coordinate the proposed leadership structure to avoid any delay attendant with potential multi-district litigation proceedings due to the egregious nature of Defendants' unlawful conduct. Proposed Interim Class Counsel seek this leadership structure to best serve the interests of the classes in the most efficient manner possible.

## V.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request the Court: (1) stay Defendants' deadlines to respond to the complaints in the individual Related Actions pending a decision on Plaintiffs' motion to consolidate actions and, if granted, until a consolidated complaint is filed; (2) consolidate the Related Actions and future actions into the first-filed action, under the caption: "*In re Marquis Software Solutions, Inc. Data Breach Litigation*"; (3) appoint Mark Lanier of the Lanier Law Firm, Jeff Ostrow of Kopelowitz Ostrow P.A., and Gary Klinger of Milberg PLLC as Interim Co-Lead Class Counsel, and Joe Kendall of Kendall Law Group, PLLC as liaison counsel, as well as an Executive Committee consisting of Raina Borrelli of Strauss Borrelli PLLC, Jonathan Mann of Pittman, Dutton, Hellmus, Bradley & Mann, P.C., Tom Loeser of Cotchett, Pitre & McCarthy, LLP, Paul Doolittle of Poulin Willey Anastopoulo LLC, Leigh Montgomery of Ellzey Kherkher Sanford Montgomery, LLP, Andrew Shamis of Shamis & Gentile P.A., Israel David of Israel David LLC, Mark Reich of Levi & Korsinsky, LLP, Jean Martin of Morgan & Morgan, and Shauna Itri of Seeger Weiss LLP; and (4) set a schedule, allowing Plaintiffs to file a Consolidated Complaint within 60 days after the Court appoints Interim Class Counsel. A proposed order is submitted herewith.

Dated: December 9, 2025

Respectfully submitted,

*/s/ Joe Kendall*
Joe Kendall
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
Tel: 214-744-3000
Fax: 214-744-3015
jkendall@kendalllawgroup.com

***Proposed Liaison Counsel and Counsel for
Plaintiffs Michelle Jinks, Christopher Raucci,
Larry Domenichello, David Robinson, Sr., Joshua
Geoffrey, and the Putative Class***

W. Mark Lanier
**THE LANIER LAW FIRM**
10940 W. Sam Houston Pkwy N., Suite 100
Houston, TX 77064
Tel.: 713-659-5200
Fax: 713/659-2204
mark.lanier@lanierlawfirm.com

Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: 954-525-4100
ostrow@kolawyers.com

Gary M. Klinger
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel.: 866-252-0878
gklinger@milberg.com

***Proposed Interim Co-Lead Class Counsel for
Plaintiff Christopher Raucci, Larry Domenichello,
and the Putative Class***

Jonathan S. Mann (*pro hac vice* forthcoming)
**PITTMAN, DUTTON, HELLUMS,**
**BRADLEY & MANN, P.C.**
2001 Park Place North, Suite 1100
Birmingham, AL 35203
Tel: 205-322-8880
Fax: 205-328-2711
jonm@pittmandutton.com

***Proposed Executive Committee Member and***
***Counsel for Plaintiff Michelle Jinks and the***
***Putative Class***

Kelly Stewart
Texas Bar No. 19221600
**K STEWART LAW, P.C.**
4597 Belfort Avenue
Dallas, Texas 75205
Tele: 972-308-6166
kelly@kstewartlaw.com

Israel David (*pro hac vice forthcoming*)
Adam M. Harris (*pro hac vice forthcoming*)
**ISRAEL DAVID LLC**
60 Broad Street, Suite 2900
New York, New York 10004
Telephone: 212-350-8850
israel.david@davidllc.com
adam.harris@davidllc.com

Mark A. Cianci (*pro hac vice forthcoming*)
**ISRAEL DAVID LLC**
399 Boylston Street, Floor 6, Suite 23
Boston, MA 02116
Telephone: 617-295-7771
mark.cianci@davidllc.com

***Proposed Executive Committee Member (Israel***
***David) and Proposed Interim Co-Lead Counsel***
***and Counsel for Plaintiff Daniel Hart and the***
***Putative Class***

Samuel J. Strauss*
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610

23

Chicago, Illinois 60611
Tele: 872-263-1100
Fax: 872-263-1109
sam@straussborrelli.com
raina@straussborrelli.com

***Proposed Executive Committee Member and
Counsel for Plaintiff David Robinson, Sr., Joshua
Geoffrey, and the Putative Class***

Leigh S. Montgomery
Texas Bar No. 24052214
lmontgomery@eksm.com
**ELLZEY KHERKHER SANFORD
MONTGOMERY, LLP**
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
Tel: 888-350-3931
Service only: service@eksm.com

***Proposed Executive Committee Member and
Counsel for Plaintiffs Jessica Boutot, William
Anderson, Leah Erban, Nellie Raymond, and the
Putative Class***

Andrew J. Shamis (TX Bar No. 24124558)
Leanna A. Loginov*
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tele: 305-479-2299 ashamis@shamisgentile.com
lloginov@shamisgentile.com

***Proposed Executive Committee Member and
Counsel for Plaintiff Tracy Cusick and the
Putative Class***

Patrick Yarborough (Texas Bar No. 24084129)
Benjamin F. Foster (Texas Bar No. 24080898)
**FOSTER YARBOROUGH PLLC**
440 Louisiana, Suite 1800
Houston, Texas 77002
Tele: 713-331-5254
Fax: 713-513-5202
patrick@fosteryarborough.com
ben@fosteryarborough.com

24

Mark S. Reich*
Melissa Meyer*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 10004
Telephone: 212-363-7500
Facsimile: 212-363-7171
ek@zlk.com
mmeyer@zlk.com

*Proposed Executive Committee Member (Mark S. Reich) and Counsel for Plaintiff Lawrence Spohrleder and the Putative Class*

William B. Federman
Tex. Bar No. 00794935
Jessica W. Wilkes
**FEDERMAN & SHERWOOD**
4131 N. Central Expressway, Ste. 900
Dallas, TX 75204
T: (800) 237-1277
E: wbf@federmanlaw.com
E: jaw@federmanlaw.com

*Counsel for Plaintiffs Michaela Brown, Christina Anstett, and the Putative Class – in support of consolidation and setting of the date to file the consolidated complaint*

*\*Pro hac vice forthcoming*

## CERTIFICATE OF CONFERENCE

On December 9, 2025, counsel for Plaintiffs conferred with counsel for Defense regarding the substance of this motion. Defense counsel does not oppose consolidation and takes no position on the appointment of Interim Class Counsel.

/s/ Joe Kendall
Joe Kendall

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served via email and via the CM/ECF system on all counsel of record on December 9, 2025.

_/s/ Joe Kendall_
Joe Kendall
