**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| IN RE MARQUIS SOFTWARE SOLUTIONS, INC. DATA BREACH LITIGATION | No.: 4:25-CV-01277-ALM |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO SONICWALL INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


**INTRODUCTION** .......... 1

**ISSUES TO BE DECIDED** .......... 2

**FACTUAL BACKGROUND** .......... 2

**ARGUMENT** .......... 6

**I. PLAINTIFFS PROPERLY PLEAD PERSONAL JURISDICTION** .......... 6

**A. Legal Standard** .......... 6

**B. SonicWall purposely availed itself of the privileges and duties of doing business in Texas by selling a Texas-based customer, Marquis, its firewall and cloud-backup products and services** .......... 7

**C. Plaintiffs' Claims Arise Out of and Relate to SonicWall's Texas Contacts** .......... 13

**D. Sonicwall Has Not Made the Required Compelling Showing the Court's Exercise of Personal Jurisdiction Over It Would Be Unfair and Unreasonable** .......... 17

**II. Plaintiffs State a Claim as to Each Cause of Action Against SonicWall** .......... 20

**A. Legal Standard** .......... 20

**B. SonicWall's Failure to Perform a Choice-of-Law Analysis Cripples Its Motion** .......... 20

**C. Plaintiffs Sufficiently State Their Negligence Claim Against SonicWall** .......... 22

**1. SonicWall misrepresents Plaintiffs' well-pleaded facts** .......... 22

**2. Plaintiffs' well-pleaded facts state a claim for negligence against SonicWall** .......... 24

**a) SonicWall owed and breached its duty to secure Marquis's network** .......... 24

**b) SonicWall's breach proximately caused the exposure of plaintiffs' Private Information – an actionable injury** .......... 26

**c) Plaintiffs adequately plead actionable injuries and damages** .......... 28

**D. Plaintiffs Sufficiently State Their Declaratory and Injunctive Relief Claim Against SonicWall** .......... 29

**CONCLUSION** .......... 30

## TABLE OF AUTHORITIES

**Cases**

*A.B. v. Salesforce.Com, Inc.*,
No. 4:20-CV-01254, 2021 LX 37876 (S.D. Tex. 2021)....27

*Ainsworth v. Moffett Eng'g, Ltd.*,
716 F.3d 174 (5th Cir. 2013) ....15

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
480 U.S. 102, 107 S. Ct. 1026 (1987)....18, 19

*Audler v. CBC Innovis Inc.*,
519 F.3d 239 (5th Cir. 2008) ....21

*Baton v. Ledger SAS,*
740 F. Supp. 3d 847, 913 (N.D. Cal. 2024) ....30

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....20

*Berkley Nat'l Ins. Co. v. Tanner,*
No. MO:23-CV-00059-DC, 2023 U.S. Dist. LEXIS 216783 (W.D. Tex. 2023) ....22

*Bounty-Full Entm't, Inc. v. Forever Blue Entm't Grp., Inc.*,
923 F. Supp. 950 (S.D. Tex. 1996) ....17

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ....9, 10

*Calder v. Jones,*
465 U.S. 783, 104 S. Ct. 1482 (1984) ....10, 15

*Cantu v. Geary Cmty. Hosp.*,
2022 WL 2195800 (E.D. Tex. Apr. 25, 2022) ....16

*Cent. Freight Lines Inc. v. APA Transport Corp.*,
322 F.3d 376 (5th Cir. 2003) ....15

*De la Rosa v. Swift Transp. Co. of Ariz.,*
618 F. Supp. 3d 606 (S.D. Tex. 2022) ....27

*Dew v. Crown Derrick Erectors, Inc.*,
208 S.W.3d 448 (Tex. 2006) ....28

*Energy Coal v. CITGO Petroleum Corp.*,
836 F.3d 457 (5th Cir. 2016) ....................21

*Erlach v. Sierra Asset Servicing, LLC*,
226 Cal. App. 4th 1281 (2014) ....................29

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ....................13, 15, 16

*Greater Houston Transp. Co. v. Phillips*,
801 S.W.2d 523 (Tex. 1990) ....................24

*GreenState Credit Union v. Hy-Vee, Inc.*,
500 F. Supp. 3d 799 (D. Minn. 2020) ....................10, 11

*Guidry v. U.S. Tobacco Co.*,
188 F.3d 619 (5th Cir. 1999) ....................10

*Holdings USA, Inc.*,
2014 WL 12561661 (W.D. Tex. Jan. 7, 2014) ....................14

*Hughes Wood Prods., Inc. v. Wagner*,
18 S.W.3d 202 (Tex. 2000) ....................21

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
No. 19-MD-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) ....................21, 22, 29

*In re Cap. One Consumer Data Sec. Breach Litig.,*
488 F. Supp. 3d 374, 415 (E.D. Va. 2020) ....................30

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
999 F.3d 1247 (11th Cir. 2021) ....................29

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
371 F. Supp. 3d 1150 (N.D. Ga. 2019) ....................25

*In re Fortra File Transfer Software Data Sec. Breach Litig.,*
748 F. Supp. 3d 1240 (S.D. Fla. Sept. 18, 2024) ....................30

*In re: Home Depot, Inc. Customer Data Sec. Breach Litig.,*
No. 1:14-md-2588-TWT, 2016 WL 2897520, at *5 (N.D. Ga. May 18, 2016) ....................30

*In re Katrina Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007) ....................19

*In re MOVEit Customer Data Sec. Breach Litig.*,
No. 23-MD-3083-ADB-PGL, 2025 WL 2176590 (D. Mass. July 31, 2025) ............................26

*In re TJX Cos. Retail Sec. Breach Litig.*,
564 F.3d 489 (1st Cir. 2009) ..........................................................................................25

*Luv N' Care, Ltd. v. Insta-Mix, Inc.*,
438 F.3d 465 (5th Cir. 2006)..........................................................................................7, 10

*Marquis Software Sols., Inc. v. SonicWall, Inc.*,
No. 4:26-cv-195 (E.D. Tex) ..........................................................................2, 8, 9, 12

*Morris v. Kansas City Ry.*,
2024 WL 3347379 (E.D. Tex. July 8, 2024) ....................................................................10

*Mumblow v. Monroe Broad., Inc.*,
401 F.3d 616 (5th Cir. 2005)........................................................................................21, 22

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*,
781 F.3d 182 (5th Cir. 2015)............................................................................................20

*Nextera Energy Mktg. LLC v. Shell Energy N. Am. (US) LP*,
No. 4:21-cv-02280, 2023 WL 2541964 (S.D. Tex. Mar. 16, 2023) ..........................................17

*Nuovo Pignone, SpA v. STORMAN ASIA M/V*,
310 F.3d 374 (5th Cir. 2002)................................................6, 7, 8, 10, 11, 12, 13, 14, 17, 18, 19

*Palsgraf v. Long Island R.R. Co.*,
248 N.Y. 339, 162 N.E. 99 (1928) ................................................................................24, 26

*Phoenix Licensing, LLC v. All. Data Sys. Corp.*,
2013 WL 12144146 (E.D. Tex. Mar. 28, 2013) ...............................................................16

*Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*,
702 F.3d 794 (5th Cir. 2012) ..........................................................................................20

*Southmark Corp. v. Life Invs., Inc.*,
851 F.2d 763 (5th Cir. 1999) ..........................................................................................10

*Spence v. Glock, Ges.m.b.H.*,
227 F.3d 308 (5th Cir. 2000) ..........................................................................................21

*Staub v. Proctor Hosp.*,
562 U.S. 411 (2011) .......................................................................................................27

*Sutton v. Advanced Aquaculture Sys., Inc.*,
621 F. Supp. 2d 435 (W.D. Tex. 2007)....................7,12

*Vardeman v. City of Houston*,
55 F.4th 1045 (5th Cir. 2022) ....................20

*Veltmann v. Heiting & Irwin*,
2012 WL 12892437 (W.D. Tex. Apr. 9, 2012) ....................19

*Walker v. Harris*,
924 S.W.2d 375 (Tex. 1996) ....................24

*Wesler v. VP Racing Fuels, Inc.,*
No. 1:20-CV-176, 2021 WL 4053415 (W.D. Tex. May 10, 2021) ....................22

*Wesler v. VP Racing Fuels, Inc.*,
No. 1:20-CV-176,2021 WL 4053187 (W.D. Tex. July 2, 2021) ....................22

*Williams v. eAdGear Holdings USA, Inc.,*
2014 WL 12561661 (W.D. Tex. Jan. 7, 2014) ....................16

**Other**

5B Charles A. Wright & Arthur R. Miller, FED. PRACTICE & PROC. § 1357 (4th ed.)............20

Fed. R. Civ. P. 12 ....................15, 18

REST. (2D) OF CONFLICT OF LAWS §§ 6, 145 (1971)....................21

REST. (2D) OF TORTS § 299A (1965) ....................25

REST. (2D) OF TORTS § 302B (1965) ....................25

REST. (2D) OF TORTS § 448 (1965) ....................27

REST. (2D) OF TORTS § 449 (1965) ....................27

Plaintiffs respond in opposition to Defendant SonicWall Inc.'s ("SonicWall") Motion to Dismiss Plaintiffs' First Consolidated Class Action Complaint [ECF No. 62] ("Motion" or "Mot.").

**INTRODUCTION**

This is a straightforward data breach action in which Plaintiffs seek redress for Defendants Marquis Software Solutions, Inc. ("Marquis") and SonicWall (collectively, "Defendants") failure to prevent a readily foreseeable compromise of their computer network, including their firewall and network security systems, and the resulting exposure of sensitive personally identifying information ("PII"). Despite being a sophisticated company bound to data-security safeguards under state and federal law, and despite being contracted by Marquis specifically help secure its systems, SonicWall's systems were vulnerable to attack, and cybercriminals infiltrated their network on August 14, 2025, gaining access to files containing a wide variety of Plaintiffs' and Class Members' PII (the "Data Breach").

SonicWall argues (I) the Court has no jurisdiction over it despite its retaining Marquis, a Texas entity, as a customer in the very relationship that gave rise to Plaintiffs' claims; and (II) it was not responsible for the security of Plaintiffs' and Class Members' PII, despite being contracted by Marquis for network security systems including a cloud-backup firewall. Both arguments are incorrect. SonicWall purposely availed itself of Texas jurisdiction, nor has it made a compelling case that jurisdiction would be unfair here.

In effect, SonicWall would have the Court hold that the criminal hacking of a computer network was unforeseeable to the cybersecurity vendor who was retained to secure that network, such that the vendor neither owed nor breached a duty to any person whose Private Information was stolen through vulnerabilities the vendor's own code changes created. It takes no "new duty" to reject that proposition and hold the vendor responsible for its unreasonable conduct. Likewise,

where Plaintiffs allege SonicWall failed to take the proper and necessary precautions in monitoring the portion of its network containing the firewall cloud backup product and failed to timely disclose that portion of its network had been compromised by threat actors. To the contrary, Plaintiffs' negligence claims are predicated on well-established common law and common sense. And Plaintiffs' well-pleaded facts plausibly allege entitlement to relief.

Just as Marquis has claims against SonicWall for its negligence, Plaintiffs do as well. *See Marquis Software Sols., Inc. v. SonicWall, Inc.*, No. 4:26-cv-195 (E.D. Tex). In the end, SonicWall's negligence has exposed Plaintiffs and Class Members to lifelong increased risk of identity theft. Notwithstanding its clear failures and Plaintiffs' clear allegations of harm, SonicWall argues Plaintiffs do not sufficiently state their claims. The Court should reject Defendants' arguments, where, as set forth below, Plaintiffs' allegations are sufficient to substantially survive dismissal under the standards articulated repeatedly by courts around the country in this very data breach context.

## ISSUES TO BE DECIDED

**Issue 1:** The Court should not dismiss the Complaint for lack of personal jurisdiction over SonicWall, because SonicWall purposely availed itself of Texas jurisdiction when it retained Marquis as a customer, out of which relationship Plaintiffs' claims arise.

**Issue 2:** The Court should not dismiss the Complaint for failure to state a claim for negligence and declaratory relief, because SonicWall enabled unauthorized intrusions into the network on which Plaintiffs' Private Information resided and thereby caused Plaintiffs harm.

## FACTUAL BACKGROUND

Plaintiffs brought this class action on behalf of all individuals whose Private Information was impacted in a data breach experienced by Defendants on or around August 14, 2025 ("Data

Breach"). Pls.' First Consolidated Class Action Complaint, ECF No. 43 ("Complaint" or "CCAC"), ¶ 1. Plaintiffs are individuals residing in the states of California, Florida, Maine, Texas, and Wisconsin. *Id.* ¶¶ 27-35, 44. Marquis is a software and financial technology vendor providing its services to various Clients throughout country, including over 700 banks and credit unions ("Clients"). *Id.* ¶¶ 3, 42. In order to provide its services to its Clients, Marquis collects, uses, and stores the Private Information of its Clients' customers. *Id.* ¶ 42. SonicWall is a third-party cybersecurity software vendor that retained Marquis as its customer, and provided it with various products including firewalls, cloud-based solutions, and other network security products. *Id.* ¶¶ 4, 6, 43. Under that relationship, Marquis used SonicWall's firewall cloud backup service in its company headquarters and a company data center. *Id.* ¶ 6. In particular, Marquis provided SonicWall with its employees' multi-factor authentication ("MFA") credentials, allowing anyone with access to such information to access unencrypted Private Information kept in Marquis' custody and care. CCAC ¶ 7.

On August 14, 2025, an unauthorized third-party threat actor was able to execute a ransomware attack on Marquis. *Id.* ¶ 8. The threat actor gained unauthorized access through what is believed to have been way a vulnerable firewall connected to Marquis' network and client data. *Id.* ¶ 8. The threat actor was able to access and obtain Plaintiffs' and Class Members' confidential Private Information from Defendants' network and systems. *Id.*

In November 2025, SonicWall informed Marquis a cloud data breach had been ongoing since February 2025, after a code change to SonicWall's application programming interface ("API") which created a vulnerability exploitable by threat actors. *Id.* ¶ 10. Marquis determined the cybercriminals exploited a vulnerability in a firewall product SonicWall provided. *Id.* ¶ 9. SonicWall's cloud backup breach provided threat actors with credentials and MFA scratch codes

that allowed them to bypass firewalls and gain access to Marquis' network systems. *Id.* ¶ 10.

As a result of the Data Breach, Plaintiffs have suffered from the following injuries: theft of their Private Information, costs associated with detecting and preventing identity theft, costs associated with time spent addressing and mitigating the consequences of this Data Breach, emotional distress the actual and/or actual injury arising from actual and/or potential fraud and identity theft, damage to and diminution in value of their Private Information, and the continued risk to their Private Information. *See, e.g.*, *id.* ¶ 121. Plaintiffs have also suffered from actual fraud and/or misuse of their Private Information as follows:

- Plaintiff Kristin Bowles experienced actual fraud on December 19, 2025, when an unknown third party accessed her account with Valley Strong Credit Union and incurred a charge in the amount of $36.00 on her Valley Strong Credit Union credit card. CCAC ¶ 171.
- Plaintiff James Dull experienced misuse of his Private Information since the Data Breach, including an increase in spam calls, amounting to approximately 15 to 20 spam calls per week. *Id.* ¶ 183.
- Plaintiff Marlene Ehler suffered from actual fraud when, after the Data Breach, an unknown third party applied for a home loan in Plaintiff Ehler's name, using her Private Information. As a result of this fraud, Plaintiff Ehler took steps to freeze her credit. *Id.* ¶ 195.
- Plaintiff John Hamisch experienced misuse of his Private Information since the Data Breach including an increase in spam and phishing phone calls and emails. *Id.* ¶ 207.
- Plaintiff Robert Harris has experienced actual fraud since September of 2025, by

way of fraudulent charges on his Norway Savings Bank debit card on at least two occasions. *Id.* ¶ 220. These fraudulent charges required Plaintiff Harris to cancel his debit cards and obtain new ones. *Id.* Plaintiff Harris was charged $30.00 because an automatic payment attempt on his account failed. *Id.* ¶ 221. Plaintiff Harris has not been reimbursed for this charge. *Id.* Plaintiff Harris has also experienced an increase in spam calls and emails. *Id.* ¶ 22.

- Plaintiff Edward Hellyer has suffered from a dramatic increase in spam emails, he has received over 120 phishing scams since February 1, 2026. *Id.* ¶ 235. In addition, on or about January 30, 2026, an unknown third party used Plaintiff Harris's Private Information and attempted to make an unauthorized charge on Plaintiff Hellyer's Suncoast Credit Union debit card. *Id.* ¶ 236.
- Plaintiff Kathleen Matlock has experienced a dramatic increase in spam emails as a result of the Data Breach. *Id.* ¶ 249.
- Plaintiff Stanley Piszczor has experienced unauthorized and fraudulent charges on his CoVantage Credit Union credit card approximately five times since October 2025. *Id.* ¶ 261. These fraudulent charges forced Plaintiff Piszczor to drive to the credit union branch in order to cancel his card and have incurred gas costs. *Id.* Plaintiff Piszczor has also suffered from an increase in spam calls and emails as a result of the Data Breach. *Id.* ¶ 262.
- Plaintiff Joseph Ridout has suffered from a dramatic increase in spam emails as a result of the Data Breach. *Id.* ¶ 274.

The nine Plaintiffs and all Class Members have a continuing interest in ensuring their PII is protected and safeguarded from future breaches. ¶¶ 24.

Through this case, Plaintiffs seek to certify a nationwide class of all individuals whose PII was impacted by the Data Breach. ¶ 280. As to SonicWall, the nationwide Class alleges two common law claims: negligence and declaratory/injunctive relief. ¶¶ 295-332, 383-92.

On July 6, 2026, SonicWall filed its motion to dismiss the CCAC, asserting Plaintiffs lack personal jurisdiction over it and fail to state a claim on both of their causes of action against it. As set forth below, SonicWall's Motion should be denied.

## ARGUMENT

### I. PLAINTIFFS PROPERLY PLEAD PERSONAL JURISDICTION.

#### A. Legal Standard

Under the Fifth Circuit's Due Process specific jurisdiction analysis, specific jurisdiction exists when (1) the defendant purposefully directed activities toward the forum or purposefully availed itself of the privilege of conducting activities there; (2) the plaintiff's claims arise out of or relate to those forum contacts; and (3) exercising jurisdiction is fair and reasonable. *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002). This standard is not in dispute *See*. Mot. at 18-19. Plaintiffs bear the burden as to the first two elements, and the defendant bears the burden on the third element. *See Id.* As to the first two elements, even where a defendant has no physical presence in the forum state, a single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact. *Id.* at 379. As to the third element, SonicWall must make a "compelling" case that the exercise of jurisdiction would be unfair and unreasonable. *Id.* at 382.

When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the nonmovant need only make a prima facie showing of jurisdiction, and the court must accept as true the nonmovant's uncontroverted allegations and resolve all factual

disputes in its favor. *Sutton v. Advanced Aquaculture Sys., Inc.*, 621 F. Supp. 2d 435, 437 (W.D. Tex. 2007). Because SonicWall requested resolution without an evidentiary hearing, Plaintiffs need only make a prima facie showing of jurisdiction and the Court must accept Plaintiffs' uncontroverted allegations as true, resolve factual conflicts in Plaintiffs' favor, and draw reasonable inferences supporting jurisdiction. *See Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006); *Nuovo Pignone*, 310 F.3d at 378. Here, all three elements weigh in favor of finding specific personal jurisdiction over SonicWall.

### B. SonicWall Purposely Availed Itself of the Privileges and Duties of Doing Business in Texas by Retaining a Texas-based Customer, Marquis, as a Customer for Its Firewall and Cloud-Backup Products and Services.

Purposeful availment focuses on the defendant's relationship with the forum state. All Plaintiffs must establish is that SonicWall took some act by which it purposefully availed itself of the privilege of conducting activities within Texas, the forum state. *Luv N' care*, 438 F.3d at 469-70. Under the uncontested allegations of Plaintiffs' Complaint, SonicWall plainly availed itself of the privileges of conducting business in Texas, but now seeks to shirk the duties attendant to these privileges.

The Complaint plainly alleges purposeful Texas conduct by SonicWall. SonicWall retained Marquis—a Texas corporation headquartered in Plano—as a customer and supplied it with firewall- and cloud-based products and services. CCAC ¶¶ 6, 36, 43, 65. The backups included the credentials and MFA scratch codes controlling access through those firewalls. *Id.* ¶¶ 67, 74, 76–77. Thus, the firewalls deployed in Texas and the cloud-backup worked in tandem: the cloud back-up stored the security configuration and access credentials for the firewalls.

The related complaint filed by Marquis against SonicWall supplies additional, case-specific detail consistent with those allegations. Marquis alleges that it deployed SonicWall firewalls at its Plano headquarters; purchased another SonicWall firewall through Dell; purchased SonicWall

remote-implementation and premier-support services; and used MySonicWall cloud backup for its devices. *Marquis Software Sols., Inc. v. SonicWall Inc.*, No. 4:26-cv-00195-ALM, ECF No. 1 ¶¶ 3, 14, 24, 30–33, 42 (E.D. Tex. Feb. 23, 2026). Marquis further alleges that SonicWall sold through channel partners, including Texas-based Dell, and that the threatened intrusion bypassed Marquis' SonicWall firewalls. *Id.* ¶¶ 10–11, 14, 24, 33. These allegations rebut SonicWall's attempt to characterize Texas as merely Marquis' fortuitous location.[1]

*Nuovo Pignone* is instructive. There, an Italian company agreed to provide international shipping services for another Italian company from Italy to Louisiana. 310 F.3d at 377, 379. Although the defendant subcontracted parts of the work and did not itself perform the unloading, it knowingly joined the economic chain that brought the equipment to Louisiana. *Id.* at 379–81. The Court reasoned: "[b]y agreeing to secure a vessel with a satisfactory onboard loading crane that it knew would be used to unload cargo in Louisiana, Fagioli reasonably should have anticipated that its failure to meet its contractual obligations might subject it to suit there." *Id.* at 379. The Fifth Circuit held that the company could not characterize Louisiana as "fortuitous, random, or attenuated after it entered into a contract specifying [the forum state] as the point of destination." *Id.* at 379. The same principle applies with greater force here: as the Complaint alleges, SonicWall supplied the relevant devices and connected services *directly* for use by a Texas-headquartered customer, including at its Plano headquarters. CCAC ¶¶ 6, 43. Indeed, SonicWall's contract with Marquis, which it has submitted to this Court in the related proceeding of *Marquis Software Sols., Inc. v. SonicWall, Inc.*, No. 4:26-cv-195, ECF No. 8-1 (E.D. Tex. Apr. 17, 2026), shows that all of its firewall and cloud-based products and related services are governed by a

[1] But at a minimum, they underscore factual disputes that cannot be resolved against Plaintiffs on a prima facie record.

master General Commercial Agreement. *Id.* at 4, ¶¶ 9-10 & Ex. A, Clause 1.

SonicWall's proposed hardware-versus-cloud distinction is therefore untenable. Mot. at 20; Vannatta Decl. [ECF 62-1] ¶¶ 15, 18–20. The relevant "contact" is not merely a box shipped into Texas. It is SonicWall's deliberate provision of an integrated security system—firewalls, configuration backups, implementation, and support—to a known Texas customer. The Complaint alleges negligence in the performance of that very relationship: SonicWall delivered its products to Texas-based Marquis, introduced an exploitable API vulnerability, stored the Texas customer's MFA scratch codes unencrypted for its firewall products sold to Marquis, failed to monitor the environment containing the customer's backups, failed to detect months of unauthorized access, and failed to timely warn Marquis. CCAC ¶¶ 73–79, 313–19.

SonicWall's own declaration confirms the deliberate relationship. It states that Marquis purchased SonicWall firewalls, created a MySonicWall account, added users, and affirmatively enabled cloud backup by registering and configuring its devices to upload their configuration files. Vannatta Decl. ¶¶ 16–17; *accord* No. 4:26-cv-195, ECF No. 8-1, ¶¶ 4-10, 18-22. Those facts show an ongoing account relationship connecting the Texas customer's deployed firewalls to SonicWall's cloud environment. They do not show an isolated, unilateral act by Marquis unknown to SonicWall.

Likewise, SonicWall's hypertechnical parsing of where specific employees were located rather than focusing on where Marquis, the customer in question, was located, is meritless. Mot. at 20; Vannatta Decl. ¶¶ 15, 18–20. SonicWall cannot avoid jurisdiction by isolating the off-forum steps through which it performed a forum-directed undertaking.[2] *See Burger King Corp. v.*

---

[2] For this reason, its argument that its failure to warn was not directed at Texas because one specific Marquis employee, their CIO, allegedly resides in Washington State, is another red herring. The

*Rudzewicz*, 471 U.S. 462, 479-80 (1985) (jurisdiction turns on the contemplated future consequences and actual course of dealing, not a mechanical locus-of-performance test); *Luv N' care*, 438 F.3d at 469-70. Modern companies routinely serve customers in one state through employees and infrastructure located elsewhere. The question is whether SonicWall deliberately created and maintained a suit-related relationship with a Texas-based customer, not whether every negligent keystroke, server, or employee in service of that contract was physically located in Texas. *Burger King*, 471 U.S. at 476; *Luv N' care*, 438 F.3d at 469-70.

SonicWall's remaining counterarguments similarly do not defeat purposeful availment. First, SonicWall invokes cases applying the *Calder* "effects" framework to intentional torts and argues that its alleged negligence was not "aimed" at Texas. Mot. at 12-15. But Plaintiffs do not rely on the fortuity that an out-of-state act produced effects in Texas, and indeed do not rely on the *Calder* effects test at all. Rather, they rely on SonicWall's deliberate commercial relationship with a known Texas customer and its provision of the very products and integrated services whose negligent performance allegedly caused the breach. *Nuovo Pignone* and the stream-of-commerce principle—not the *Calder* effects test—is thus the operative framework. *See* 310 F.3d at 379–81.[3]

---

warning was not owed to the CIO personally, but rather to the company, Marquis, which indisputably operates from Texas.

[3] For this reason, SonicWall's cited cases with respect to purposeful availment, Mot. at 19-20, are all inapposite as none involved the stream-of-commerce principle at issue here. *See Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 630 (5th Cir. 1999) (stream of commerce principle not considered, as court instead applied *Calder v. Jones* effects test, which only applies to intentional torts and is not at issue here); *Southmark Corp. v. Life Invs., Inc.*, 851 F.2d 763, 773 (5th Cir. 1999) (same); *Morris v. Kansas City Ry.*, 2024 WL 3347379, at *3 (E.D. Tex. July 8, 2024) (same); *GreenState Credit Union v. Hy-Vee, Inc.*, 500 F. Supp. 3d 799, 802-03, 805 (D. Minn. 2020) (court did not consider or apply stream of commerce principle and the case did not involve a purchaser of goods or services located in the forum state). In addition, the language cited by SonicWall from *Guidry*, Mot. at 19-20, is dicta, not holding, as the case did not involve stream of commerce principle, unlike here, and instead applied an entirely different doctrine, the *Calder v. Jones* effects test, and in any event, the court there found personal jurisdiction appropriate over the defendants. Second, *Southmark Corp.* is additionally inapposite because the complaint at issue there did not contain

Second, SonicWall says Marquis' Texas activities and alleged negligence cannot be imputed to it. Mot. at 14–15 & n.3. This is a red herring, as Plaintiffs do not impute Marquis' contacts or alleged conduct to SonicWall. SonicWall's *own* contacts are the sale, activation, support, and continuing provision of firewall and cloud-backup functionality for Marquis' Texas operations, together with its alleged failure to warn its Texas customer that those configurations and credentials had been compromised. CCAC ¶¶ 6, 43, 65–67, 73–79, 313–19. Marquis' location matters because it identifies the destination and beneficiary of SonicWall's own transaction—not because Marquis' separate conduct is attributed to SonicWall.

Indeed, in *Nuovo Pignone*, the Fifth Circuit rejected this very argument, where a non-resident defendant had argued that its contractual obligations ended in Italy because a third-party was responsible for part of the allegedly negligent conduct at issue that took place in the forum state. The Fifth Circuit reasoned that the defendant's argument relied on a misapplication of the proper legal standard, as the court is "required to accept [the plaintiff's] allegation[s]" in its complaint, which pointed to the non-resident defendant's *own* conduct as among the causes of the plaintiffs' harm that took place in the forum state. 310 F.3d at 380. As the Fifth Circuit explained, the non-resident defendant could not "avoid personal jurisdiction by speculating as to whether another party was actually responsible for the" harm. *Id.* Rather, "[t]hat question is left for a trial on the merits." *Id.* That is precisely the case here, as the Complaint plainly points to SonicWall's

---

allegations that the counter party to the underlying contractual agreement with the defendant was a resident of Texas and did not allege that the agreement pertained to business in Texas. *Id.* at 772-73. In contrast, here the complaint does allege that SonicWall's negligence arises from its contractual relationship with Texas-based Marquis, as well as the users serviced by Marquis which includes Texas residents like Kathleen Matlock. Third, SonicWall's citation to *GreenState*, is further inapposite, as *GreenState* is an Eighth Circuit district court case applying the Eighth Circuit's five-factor minimum contacts test, an entirely different test than the one applied here in the Fifth Circuit. The language quoted by SonicWall, moreover, pertains to a factor that is not part of the Fifth Circuit's test at all. Mot. at 20 (citing *GreenState*, 500 F. Supp. 3d at 805).

*own* negligent conduct as among the causes of harm to the Plaintiffs, including Texas-resident Kathleen Matlock, and the Class, including countless Texas residents. *See, e.g.*, CCAC ¶ 313.

Third, SonicWall's California choice-of-law and forum-selection provisions do not erase its Texas contacts. Mot. at 11–12. Contractual clauses may inform the parties' expectations, but they cannot defeat purposeful availment where a product is delivered directly to a buyer in the forum state. *Sutton*, 621 F. Supp. 2d at 438-40 (holding that an out-of-state dealer's contacts with Texas—including the delivery of products and services to Texas buyers—constituted purposeful availment under the stream of commerce theory even though the underlying contract selected an out-of-state forum under its forum selection clause). That is precisely the case here. CCAC ¶¶ 6, 43, 65–67, 73–79, 313–19.

Fourth, SonicWall wrongly argues that the stream of commerce theory only strictly applies to products and does not extend to its general commercial relationship with Texas-based Marquis through which it contractually sold as an integrated set firewall and cloud-back up products and related services. Mot. at 23. However, the Fifth Circuit has not limited the stream of commerce principle in such a cramped manner, and instead has found it applicable to contractual relationships, like the one between SonicWall and Marquis, involving the provision of services and products in an integrated manner. *See, e.g.*, *Nuovo Pignone*, 310 F.3d at 377, 379.

Here, the products and services provided by SonicWall to Marquis in an integrated master agreement were interrelated and tethered to SonicWall hardware deployed in Texas for a known Texas customer. CCAC ¶¶ 65–67, 74, 76–77; No. 4:26-cv-195, ECF No. 8-1, at 4, ¶¶ 9-10 & Ex. A, Clause 1; Vannatta Decl. ¶¶ 16–17. *Nuovo Pignone* likewise involved a mixed transaction combining services, equipment obligations, and downstream performance. 310 F.3d at 377, 379–81 (applying the stream-of-commerce principle to the non-resident defendant's service contract to

provide freight shipping services, which included warranties that it would secure a vessel and onboard equipment that would not be defective). There, the Fifth Circuit held that where a non-resident defendant's contact with the forum state stems from a goods-and-services contract offered by the non-resident defendant that allegedly caused harm in the forum state, specific jurisdiction over the non-resident defendant exists where the goods and services were delivered "into the stream of commerce with the expectation that it would be purchased or used by consumers in the forum state." *Id.* at 380. The constitutional question is purposeful forum conduct, not whether a defendant can relabel part of an integrated product-and-service offering as purely a "service."

Finally, SonicWall wrongly suggests that the stream of commerce principle only applies to "situations in which a manufacturer consistently serves a forum's market, such as where a manufacturer markets and sells its products to forum residents through an established network of independent dealers or distributors." Mot. at 23. This argument is another red herring. Indeed, it cannot be squared with controlling Fifth Circuit precedent *Nuovo Pignone*, in which the Fifth Circuit applied the stream-of-commerce principle despite the absence of allegations at the foreign Italy-based defendant routinely and consistently served Louisiana's market with its cargo shipping services. 310 F.3d at 377, 379.

**C. Plaintiffs' Claims Arise Out of and Relate to SonicWall's Texas Contacts.**

The relatedness requirement is likewise satisfied. It does not demand strict but-for causation. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). The Supreme Court has emphasized that "arise out of or relate to" contemplates relationships supporting jurisdiction even when a particular forum contact did not cause the injury in the narrowest sense. *Id.* Here, however, the connection is direct: the Complaint alleges that SonicWall supplied Marquis' Texas operations with firewalls and cloud backup; exposed the configurations

and credentials for those firewalls; failed to warn Marquis; thereby enabling the threat actors to bypass the firewalls, enter the network protected by them, and access Plaintiffs' information on Marquis' network; and that Plaintiffs were accordingly injured due to SonicWall's negligence. CCAC ¶¶ 6-7, 9, 10-12, 18, 43, 44, 47, 63-67, 69-71, 73-79, 248-53, 301, 307, 313–32.

SonicWall wrongly argues Plaintiffs do not allege their claims arise from SonicWall's sale of its products and services to Texas-based Marquis. Mot. at 23. This is meritless. The Complaint extensively alleges that SonicWall's negligent failure to use reasonable care arising from its provision of the firewalls and cloud-backup products and services to Texas-based Marquis, including its failure to secure the backups and timely warn Marquis, gave rise to Plaintiffs' injuries. *Id.* ¶¶ 6-7, 9, 10-12, 18, 43, 44, 47, 63-67, 69-71, 73-79, 248-53, 301, 307, 313–32. Thus, the Complaint alleges injuries that arise from SonicWall's contacts with Texas-based Marquis.

*Nuovo Pignone* again illustrates the point. The defendant argued that its contractual obligations ended abroad and that others were responsible for the Louisiana unloading accident. 310 F.3d at 380. The Fifth Circuit rejected that merits-based effort to sever the claim from the forum contact because the complaint alleged that the defendant's own failure contributed to the injury. *Id.* Whether another party was actually responsible was "left for a trial on the merits." *Id.*

SonicWall likewise cannot defeat jurisdiction by insisting that Marquis' independent security failures, rather than SonicWall's exposed credentials, ultimately caused the breach. The Complaint alleges concurrent negligence. CCAC ¶¶ 73–82, 312–32. At this stage those allegations must be credited; comparative fault is a merits question.

SonicWall's reliance on the absence of contractual privity with Plaintiffs is also misplaced. Mot. at 24. SonicWall wrongly argues that Plaintiffs cannot rely on SonicWall's contractual relationship to provide products and services to Texas-based Marquis, even though Plaintiffs and

the Class were the foreseeable end users of Marquis' services. *Id.* (citing *Nocando Mem Holdings, Ltd. v. Credit Com. De France, S.A.*, No. Civ.A.SA-01-1194-XR, 2004 WL 2603739, at *18–19 (W.D. Tex. Oct. 6, 2004)).[4] Specific jurisdiction examines the relationship among the defendant, the forum, and the litigation; it does not impose a privity requirement. *Ford*, 592 U.S. at 359–60. Indeed, the Fifth Circuit has held that where a non-forum defendant has entered into a contractual agreement to provide goods and/or services to a forum-based counter-party serving end users who are residents of the forum state, is it clearly foreseeable to the non-forum defendant that many of the end users "would also come from that [forum] state" such that the forum state courts may exercise personal jurisdiction over that defendant. *Cent. Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 382 (5th Cir. 2003).

Such foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce, even if the plaintiff had no contractual relationship with the non-forum defendant. *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 176, 177 (5th Cir. 2013). In *Ainsworth*, the Fifth Circuit exercised personal jurisdiction over a foreign manufacturer based on products distributed into Mississippi even though the injured worker was not the purchaser or a party to the distribution agreement. *Id.* at 177–79. Similarly, Plaintiffs' status downstream from Marquis does not break the jurisdictional connection where the alleged injury relates to the security products and services SonicWall deliberately supplied to Marquis in Texas.

Independently, in *Ford*, 592 U.S. at 354-55, the Supreme Court held that the arising-out-of

[4] Notably, SonicWall's cited authority does not stand for the proposition cited. The language quoted by SonicWall from *Nocando* is dicta first because the court did not apply the stream of commerce principle, but rather the *Calder v. Jones* effects test, and second because the court found personal jurisdiction *warranted* under *Calder*, making the quoted language mere dicta. *Id.* at 2004 WL 2603739, at *18–19, 20-22, 39.

prong is satisfied such that a court may exercise specific personal jurisdiction over a non-resident defendant when the defendant purposefully availed itself of the forum state's market by selling products there *and* the complaint alleges that a named plaintiff resident of the forum state suffered injury in the forum state as a result of the defendant's conduct. The Court held that the principle applies even where, as here, the product that caused the injury was not designed or manufactured in that state. *Id.*

The Texas nexus is especially concrete for Plaintiff Kathleen Matlock. She resides in Texas and alleges that the breach compromised her name, date of birth, and Social Security number; increased spam to the email address she provided for financial services; forced her to spend time researching the breach, filtering messages, and monitoring accounts; diminished the value of her information; and caused continuing anxiety and risk. CCAC ¶¶ 33, 243–54. Thus, SonicWall's arguments that "[n]or can Plaintiffs rely on any allegations—which, in any event, they do not make—that they suffered harm in Texas" are entirely specious. Mot. at 20-21.[5]

---

[5] SonicWall's case citations to the contrary are dicta, distinguishable, or quoted out of context. First, Sonicwall's citation to *Phoenix Licensing, LLC v. All. Data Sys. Corp*., 2013 WL 12144146, at *2 (E.D. Tex. Mar. 28, 2013), Mot. at 21, for the assertion that allegations a Texas-based Plaintiff suffered an injury caused by the defendant's alleged negligence in the forum state is insufficient to establish specific jurisdiction predates *Ford*, which plainly held that it is sufficient to establish the "arising under" element. In any event, the quoted language was mere dicta, not holding, as the court in *Phoenix Licensing* found the requirements of personal jurisdiction to be satisfied. Finally, to the extent SonicWall cites this case for the proposition that a plaintiff's instate injury is insufficient to establish the purposeful availment prong, Plaintiffs do not rely on Plaintiff Matlock's injuries to establish purposeful availment, making SonicWall's argument a meritless red herring. SonicWall's citation to *Williams v. eAdGear Holdings USA, Inc.*, 2014 WL 12561661, at *7 (W.D. Tex. Jan. 7, 2014) is inapposite for the same reason, as the quoted language there pertained to the purposeful availment clause. As Plaintiffs do not rely on Plaintiff Matlock's injuries to establish purposeful availment, this case is inapposite. Finally, SonicWall's citation to *Cantu v. Geary Cmty. Hosp.*, 2022 WL 2195800, at *3 (E.D. Tex. Apr. 25, 2022) is likewise unavailing as the complaint at issue in *Cantu* did not allege that the defendant had sold any products underlying the claims at issue into the forum state or that the stream of commerce theory was at issue.

Finally, Plaintiffs' declaratory claim arises from the same contacts. Plaintiffs seek a declaration concerning SonicWall's continuing duties in providing firewall and cloud-backup products and services, including duties relating to customer networks such as Marquis'. CCAC ¶¶ 383–90. Where, as here, a forum-state plaintiff (Kathleen Matlock) seeks a declaration concerning the defendant's liability for negligent conduct tied to its purposeful availment of conducting business in Texas that injured the forum-state plaintiff in the forum, the declaratory judgment claim arises from the same forum-directed conduct as the negligence claim and satisfies specific jurisdiction requirements. *Bounty-Full Entm't, Inc. v. Forever Blue Entm't Grp., Inc.*, 923 F. Supp. 950, 954, 955-57 (S.D. Tex. 1996). Because the requested declaration concerns the same forum-directed relationship and alleged security failures, it provides no basis for claim-specific dismissal under Rule 12(b)(2). Whether the declaration is duplicative or otherwise cognizable under Rule 12(b)(6) is a separate merits question.[6]

**D. SonicWall Has Not Made the Required Compelling Showing the Court's Exercise of Personal Jurisdiction Over It Would Be Unfair and Unreasonable.**

Because Plaintiffs have shown purposeful availment and relatedness, SonicWall bears the burden to present a compelling case that jurisdiction would be unfair. *Nuovo Pignone*, 310 F.3d at 382. SonicWall has not and cannot meet this burden.

In the Fifth Circuit, courts consider the following factors: (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies. *Id.* at 382.

---

[6] SonicWall's only cited case with respect to this point, *Nextera Energy*, is inapposite—the case did not raise, and the court did not adjudicate, any claim of specific personal jurisdiction. *See Nextera Energy Mktg. LLC v. Shell Energy N. Am. (US) LP*, No. 4:21-cv-02280, 2023 WL 2541964, at *3 (S.D. Tex. Mar. 16, 2023)." *See also* Mot. at 19 n.2.

Defendant's main argument is that defendant the lawsuit in Texas would impose burdens on SonicWall. Mot. at 25. Its argument is not compelling and does not outweigh the other factors, all of which weigh in favor of finding the exercise of jurisdiction to be fair and reasonable. The burden on SonicWall is ordinary, not constitutionally exceptional. SonicWall is a domestic corporation with approximately 1,600 employees, including 40 employees working from Texas. Vannatta Decl. ¶¶ 5, 13. It operates nationally and globally, and it is already defending Marquis' related lawsuit before this same Court. Requiring it to litigate in Texas is far less onerous than the burden found insufficient in *Nuovo Pignone*, where an Italian company faced litigation in a foreign legal system. 310 F.3d at 382. The location of some witnesses and electronic records outside Texas may bear on convenience, but it does not make jurisdiction fundamentally unfair—particularly when the same witnesses and records are implicated in Marquis' pending Texas action.

The remaining factors weigh decisively in favor of finding the exercise of personal jurisdiction over SonicWall to be fair and reasonable. Texas has a substantial interest in this litigation. Marquis is a Texas corporation headquartered in Plano; its Texas operations and network were allegedly attacked; a named Plaintiff is a Texas resident; and the Court is already presiding over the consolidated consumer litigation and Marquis' directly related suit against SonicWall. CCAC ¶¶ 33, 36, 62–80, 243–54; Marquis Compl. ¶¶ 13, 16–17, 31–38. Texas therefore has an interest in redressing injuries to its residents and businesses and in adjudicating alleged negligence connected to cybersecurity products deployed here. Citing to *Asahi Metal Indus. Co. v. Sup. Ct.*, 480 U.S. 102, 114 (1987), SonicWall wrongly argues that Texas does not have a substantial interest in Plaintiffs (including Texas-based Plaintiff Kathleen Matlock and Texas-based Class Members). Mot. at 25. SonicWall is wrong, as this case is not like *Asahi*, where neither the plaintiff nor the

defendant was a forum resident and the remaining dispute was between foreign companies.[7] *See Asahi*, 480 U.S. at 114. In *Nuovo Pignone*, the Fifth Circuit rejected Defendant's very argument, that the forum state had no interest in hearing the suit where, as here the alleged tort occurred in part in the forum state. *Nuovo Pignone*, 310 F.3d at 382 (distinguishing *Asahi*). Rather, because the alleged injuries at issue here occurred in part in the forum state, CCAC ¶¶ 243-52, the forum state "has an interest in redressing the injury" claimed by plaintiffs. *Id.*

As to the third factor, Plaintiff Kathleen Matlock, a Texas resident, as well as the countless Texas Class Members, all have an interest in obtaining convenient and effective relief. Moreover, as the Related Actions are pending here and must remain here because Marquis is a Texas-based company, Plaintiffs have an interest in litigating their claims together for efficiency, cost-savings, and convenience. SonicWall's argument to the contrary is specious. Mot. at 26

The fourth and fifth factors likewise reinforce that the exercise of personal jurisdiction is reasonable. Texas and the other interested states share an interest in responsible cybersecurity practices, compensation for residents injured by data breaches, and consistent adjudication of overlapping claims. The consumer claims against Marquis necessarily remain here, and the Court is already managing the overlapping factual questions surrounding the same Data Breach. Splitting SonicWall's alleged responsibility into a second action before a California court would duplicate discovery, expert work, motion practice, and judicial effort, while risking inconsistent findings concerning the same attack vector and causal chain. Keeping the related claims together promotes convenient and effective relief and the efficient resolution of this controversy.

In short, SonicWall deliberately supplied a Texas customer with the firewall- and cloud-

[7] For this reason, SonicWall's cited authority, *Veltmann v. Heiting & Irwin*, 2012 WL 12892437, at *4 (W.D. Tex. Apr. 9, 2012), which relied on the fact that none of the plaintiffs nor defendants were Texas residents, is inapposite.

backup products and services at the center of this case; Plaintiffs' claims directly relate to alleged failures in that undertaking; and litigating alongside the already-pending related actions is neither unfair nor unreasonable. The Court should thus deny SonicWall's Rule 12(b)(2) motion.

## II. Plaintiffs State a Claim as to Each Cause of Action Against SonicWall.

### A. Legal Standard

A Rule 12(b)(6) motion challenges the legal sufficiency of a complaint. *See Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012). Such motions are thus reviewed de novo, with courts accepting as true the well-pleaded factual allegations in the complaint and viewing them in the light most favorable to the plaintiff. *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) (cleaned up). Further, "[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Vardeman v. City of Houston*, 55 F.4th 1045, 1050 (5th Cir. 2022). A complaint need only contain "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and if it does not, "leave to amend the complaint should be refused only if . . . permitting an amendment would be futile." 5B Charles A. Wright & Arthur R. Miller, FED. PRACTICE & PROC. § 1357 (4th ed.).[8]

### B. SonicWall's Failure to Perform a Choice-of-Law Analysis Cripples Its Motion.

SonicWall notes Plaintiffs have not affirmatively pled which states' laws should govern their negligence claims.[9] Mot. at 21. SonicWall nonetheless insists Plaintiffs' claims cannot survive under *any* state's law and foregoes a choice-of-law analysis on the grounds that the relevant

[8] Plaintiffs request an opportunity to amend if the Court finds any merit in SonicWall's Rule 12(b)(6) motion.

[9] This ignores that Plaintiffs' proposed California Subclass. *See* CCAC ¶ 280.

negligence laws "are not materially different." *See id.* But *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) establishes only a general rule that courts need not perform a full conflicts analysis if the relevant state laws do not conflict.

SonicWall's cites *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-MD-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) ("*AMCA*"), but *AMCA* fails to justify SonicWall's rush to judgment here. In *AMCA*, the court observed that a "choice of law analysis has routinely been found to be premature at the motion to dismiss phase of a class action, because a choice-of-law analysis is fact-intensive and requires an inquiry on a claim-by-claim basis." *Id.* at *13 (cleaned up). The court then denied the defendants' motion to dismiss the plaintiffs' negligence claims after concluding the defendants' briefing on the choice-of-law issue was inadequate; the court considered some of the defendants' arguments in the abstract, but rejected them once it was satisfied the plaintiffs had satisfied the "basic elements of negligence" at a general level. *Id.* at *13–14. And even that general inquiry is further than this Court need proceed.

In the Fifth Circuit, "[c]hoice-of-law decisions can be resolved at the motion to dismiss stage when factual development is not necessary to resolve the inquiry." *Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 459 (5th Cir. 2016). But "federal courts are obliged to apply the choice of law rules of the forum state" in diversity cases like this putative class action, *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir. 2000); *see also Audler v. CBC Innovis Inc.*, 519 F.3d 239, 248 (5th Cir. 2008) ("CAFA is based on diversity jurisdiction"), and Texas applies the Restatement's multi-factor "most significant relationship" test. *See Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) (citing REST. (2D) OF CONFLICT OF LAWS §§ 6, 145 (1971)). This is a fact-based test, so federal courts in Texas frequently deny 12(b)(6) motions as

premature when the movant fails to brief the choice of law. *See, e.g.*, *Berkley Nat'l Ins. Co. v. Tanner*, No. MO:23-CV-00059-DC, 2023 WL 8461685, at *2–3 (W.D. Tex. Nov. 8, 2023), *adopted*, 2023 WL 8461645 (W.D. Tex. Dec. 5, 2023); *Wesler v. VP Racing Fuels, Inc.*, No. 1:20-CV-176, 2021 WL 4053415, at *2–4 (W.D. Tex. May 10, 2021), *adopted*, 2021 WL 4053187 (W.D. Tex. July 2, 2021). The Court should similarly deny the Motion.

Nothing in *Mumblow* dictates a contrary result. The *Mumblow* court was not satisfied by observing that contract law uniformly requires offer and acceptance; it examined the contours of a specific, dispositive issue—the means and manner of proving whether an oral obligation was conditional—and confirmed (with the benefit of a full trial record) that the states' laws did not differ on *that* issue. *See* 401 F.3d at 620–21. SonicWall undertakes no comparable inquiry. It asserts that every relevant state requires duty and proximate cause as elements of negligence, *see* Mot. at 21–24, but never compares how those states treat the boundaries of those elements—for instance, what renders a harm foreseeable, or when an intervening act breaks the causal chain. *Mumblow* does not excuse the necessity of *actually* showing "not material conflicts" exist; it just demonstrates SonicWall's failure to make that showing. SonicWall's request for a "no material conflicts" finding on the face of a complaint, without the benefit of any discovery or briefing on the "most significant relationship" test is inappropriate at the 12(b)(6) stage. This Court should decline to entertain SonicWall's motion, and it should certainly go no further than the *AMCA* court. In an abundance of caution, Plaintiffs will show their well-pleaded facts state a negligence claim at that general level. *Cf.* 2021 WL 5937742, at *14–16.

### C. Plaintiffs Sufficiently State Their Negligence Claim Against SonicWall.

#### 1. SonicWall misrepresents Plaintiffs' well-pleaded facts.

To raise a threshold issue, SonicWall distinguishes its "Cloud Backup Incident" from the

"Marquis Data Breach" as unrelated events, reasoning that Plaintiffs "do not allege the same criminal actor was involved in both incidents, nor explain how the information obtained [in the Cloud Backup Incident] could have caused the Marquis Data Breach." Mot. at 5. With respect, that mischaracterization defies the plain language of Plaintiffs' Complaint, and a 12(b)(6) motion must engage the plaintiffs' allegations on their own terms. Here, Plaintiffs allege, in detail, how SonicWall's conduct caused the "Cloud Backup Incident," which threat actors then exploited to obtain Marquis' firewall configurations and commit the Marquis Data Breach before SonicWall detected the problem. *See* CCAC ¶¶ 7–11, 65–67, 74–79.

As Marquis' cybersecurity vendor, SonicWall provided firewall services for Marquis' network that included a "cloud backup" so that Marquis could recover its firewall configurations in case of device failure. CCAC ¶¶ 6, 65. These configuration backup files contained "scratch codes" that could bypass Marquis' multi-factor authentication (MFA) in the event that one of Marquis' users lost access to their dual-factor authentication device. *Id.* ¶¶ 7, 74, 76. But those scratch codes were unencrypted, notwithstanding the known risk of exposure. *Id.* ¶¶ 9, 74, 76–77. And in February 2025, SonicWall introduced a code change to its application programming interface (API) that exposed these cloud files to threat actors. *Id.* ¶¶ 10, 74. As a result of the API change, anyone with a device serial number could download the configuration backups without using SonicWall credentials—and since device serial numbers are algorithmically predictable, a brute-force attack (*e.g.*, 00001, 00002, 00003) would eventually expose the backup files and their unencrypted contents. *See id.* ¶¶ 74–77. SonicWall itself admitted to Marquis in November 2025 that a threat actor had exploited this vulnerability to obtain Marquis' firewall configurations. *Id.* ¶¶ 10, 65–67, 79.

By then, it was too late. In August 2025, threat actors used the unencrypted firewall

configuration files and credentials taken from SonicWall to access Marquis' network on which Plaintiffs' Private Information was stored, thereby exposing Plaintiffs to all of the actual and increased risk of harms associated with identity theft. *Id.* ¶¶ 8–9, 11, 65–67. In other words, SonicWall's conduct enabled a hack of the very network its firewalls were supposed to protect, exposing the data thereon—Plaintiffs' Private Information.

**2. Plaintiffs' well-pleaded facts state a claim for negligence against SonicWall.**

**a) SonicWall owed and breached its duty to secure Marquis' network.**

SonicWall correctly states the "general rule" that "a person has no legal duty to protect another from the criminal acts of a third person or control the conduct of another." Mot. at 23 (quoting *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)). It protests Plaintiffs do not satisfy two exceptions: a "special relationship" (like that owed to a customer) or "criminal conduct [that] was a foreseeable result of SonicWall's negligence." *See* Mot. at 22–23 (cleaned up). But *Walker* and its progeny concern instances of nonfeasance, not malfeasance, where Plaintiffs allege the latter. *See* CCAC ¶¶ 10, 74, 76. And just as critically, SonicWall assumes that exceptions *sufficient* to create a duty are *necessary* for a duty when there are other, more fundamental bases.

At bottom, this case "involve[s] a straightforward application of the *Palsgraf* rule" that "defines the parameters of the concept of duty found in modern tort law." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 526 (Tex. 1990); *see Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99, 100 (1928) ("The risk reasonably to be perceived defines the duty to be obeyed[.]"). If a "lessor who retains control over the security and safety of the premises owes a duty to a tenant's employee to use ordinary care to protect the employee if the lessor knows or has reason to know of an unreasonable and foreseeable risk of harm from the criminal acts of third parties," *Walker*, 924 S.W.2d at 377 (citing *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex.

1993)), a cybersecurity vendor who undertakes to protect a digital network has reason to foresee a duty to secure that network from hackers. *Accord* REST. (2D) OF TORTS § 299A (1965) ("[O]ne who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities"); *see also id.* at § 302B (1965) ("An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal"). SonicWall cannot seriously contend otherwise.

Duty and breach are thus apparent on the face of the Complaint. SonicWall markets itself as "a cybersecurity forerunner with more than 30 years of expertise," whose firewall products deliver "best-in-class threat protection," "enterprise-grade protection," and "unrivaled threat protection" against unauthorized network intrusion. *See* CCAC, ¶¶ 43, 47, 51 (cleaned up). Marquis retained SonicWall and relied on its firewall products for that precise purpose: to secure its network and prevent unauthorized access to the information thereon. *Id.* ¶¶ 6, 43. SonicWall cannot fairly contrast itself to industry peers to obtain business as a cybersecurity provider and then decry those same industry standards—which Plaintiffs pled in detail—when its conduct falls short of them. *See id.* ¶¶ 71, 77–79, 110–19. And the FTC Act need not authorize a private cause of action for FTC guidance to similarly inform the industry standard. *See id.* ¶¶ 100–09; *accord In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1176 (N.D. Ga. 2019) ("Section 5 of the FTC Act can provide a statutory duty for a negligence . . . claim, even if the underlying statute does not itself provide a private right of action."); *see also In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 497 (1st Cir. 2009) ("Where, as here, a substantial body of FTC complaints and consent decrees focus on a class of conduct, it is hard to see why a court

would choose flatly to ignore it.”). Exposing the means of bypassing a network’s MFA protection to a brute-force attack is a breach of a cybersecurity provider’s duty of care. *See* CCAC ¶¶ 7–12, 18, 47, 73–78.

SonicWall resists this intuitive conclusion by casting its “possession” of Plaintiffs’ Private Information as a condition for owing Plaintiffs a duty, but its authorities at most note the defendant held the plaintiff’s information, not that possession was a liability predicate. *See* Mot. at 22 n.5, 23–24. Indeed, the *In re MOVEit* litigation confirms this. *In re MOVEit* arose when cybercriminals exploited vulnerabilities in software offered by Progress Software Corporation to exfiltrate information from various companies using that software; the plaintiffs whose information was stolen then sued both Progress and the companies who’d used the vulnerable software. SonicWall cites *MOVEit* MDL Order No. 23 in its brief, *see* Mot. at 22 n.5, which concerned the non-Progress defendants, but *MOVEit* MDL Order No. 22, issued the very same day, recognized that Progress *also* owed a duty to the plaintiffs whose information was exfiltrated, even though “Plaintiffs do not allege that Progress ever possessed their data[.]”*In re MOVEit Customer Data Sec. Breach Litig.*, No. 23-MD-3083-ADB-PGL, 2025 WL 2176590, at *9–10 (D. Mass. July 31, 2025). So too here. For a cybersecurity provider like SonicWall, the duty arises via SonicWall’s custodianship of the systems on which Plaintiffs’ private information was held. *See* CCAC ¶¶ 6–11, 65–67. Because it is eminently foreseeable such systems may be attacked, and foreseeability shapes duty, *see Palsgraf*, 162 N.E. at 100, SonicWall’s breach of its duty is necessarily owed to Plaintiffs, not merely Marquis. *See* CCAC ¶¶ 7–11, 65–67, 74–79.

**b) SonicWall’s breach proximately caused the exposure of Plaintiffs’ Private Information—an actionable injury.**

Mischaracterizations of the record and logical errors also infect SonicWall’s causation arguments. First, SonicWall invokes the principle that mere “facilitation” of an injury falls short

of proximate causation, but its two authorities are trivially distinguishable from Plaintiffs' well-pleaded facts. In *A.B. v. Salesforce.com, Inc.*, sex-trafficking victims alleged that the sale of data monitoring technology to a sex-trafficking website allowed that website to upscale its marketing, negligently facilitating the victims' injuries; the court found this fell short of pleading a proximate cause because the plaintiffs had "not alleged facts demonstrating how Salesforce's marketing advice and/or products were essential to the ads that trafficked [them]." *See* No. 4:20-CV-01254, 2021 WL 3616097, at *1–2, *5 (S.D. Tex. Mar. 22, 2021). And in *De La Rosa v. Swift Transp. Co. of Ariz., LLC*, the court granted a summary judgment (not a 12(b)(6) motion) because the plaintiffs had failed to prove an employer's failure to monitor its driver's hours-of-service was the cause of his wreck, and not some other cause like "mechanical failure, a sudden medical event, or driver distraction/inattentiveness . . . leading to the accident notwithstanding the supposed effect of cumulative fatigue[.]" 618 F. Supp. 3d 606, 619–20 (S.D. Tex. 2022). But in this case, Plaintiffs have pled that SonicWall's breach of its duties as a cybersecurity vendor was essential to causing the Marquis Data Breach: the tools the hackers used to access Marquis' network were obtained from SonicWall through SonicWall's negligent handling of the firewall configuration files and deployed before SonicWall warned Marquis of a problem. CCAC ¶¶ 6–11, 65–67. The hackers could not have accomplished the Data Breach but for SonicWall's deficient cybersecurity.

To be sure, Marquis' negligence is an *additional* cause of Plaintiffs' injuries, but "it is axiomatic under tort law that the exercise of judgment by the decisionmaker does not prevent the earlier agent's action . . . from being the proximate cause of the harm. Proximate cause requires only some direct relation between the injury asserted and the injurious conduct alleged, and excludes only those links that are too remote, purely contingent, or indirect." *Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011) (cleaned up). Injuries often have multiple proximate causes, and

"[a] cause can be thought 'superseding' only if it is a cause of independent origin that was not foreseeable." *Id.* at 420 (cleaned up). In other words, "if the intervening force was foreseeable at the time of the defendant's negligence, the force is considered to be a 'concurring cause' of the plaintiff's injuries, and the defendant remains liable for the original negligence." *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 451 (Tex. 2006) (quotation omitted).

SonicWall's treatment of "intervening criminal acts and Marquis' own alleged failures" as "independent" of its own negligence is thus illogical. *See* Mot. at 26. A sole cause is a proximate cause, but a cause need not be the sole cause to be proximate (*i.e.*, it need not be snowing to be cold outside). Plaintiffs' allegation that "Marquis could have prevented or mitigated the Data Breach" does not exonerate SonicWall from its liability for negligence (*cf.* Mot. at 5–6, 26 (quoting CCAC ¶ 80)) because Marquis' failures—like the cyberattack itself—were foreseeable at the time of SonicWall's own negligence. *Accord* REST. (2D) OF TORTS § 448 (1965) (intentional conduct by a third person is not a superseding cause when "the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime" and the actor should have realized the likelihood such a situation might be created"); § 449 ("If the likelihood that a third person may act in a particular manner is . . . one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby").

**c) Plaintiffs adequately plead actionable injuries and damages.**

Finally, SonicWall launches a scattershot attack on Plaintiffs' alleged damages, cherry-picking authorities without regard for choice-of-law considerations. *See* Mot. at 26–29. The damages Plaintiffs allege are routinely upheld in data breach cases at the motion to dismiss stage. Indeed, SonicWall's rush to judgment at the Rule 12(b)(6) stage is inappropriate in this context.

*E.g.*, *Erlach v. Sierra Asset Servicing, LLC*, 226 Cal. App. 4th 1281, 1299 (2014) (permitting recovery for negligent infliction of emotional distress without physical injury in cases involving tortious interference with property rights). Plaintiffs' Rule 12(b)(6) burden as to damages is satisfied by facts that establish Article III standing. *See AMCA*, 2021 WL 5937742, at *16. SonicWall does not contest Plaintiffs have Article III standing. The allegations linking the unauthorized use of Plaintiffs' Private Information to the Data Breach, including unauthorized transactions on their financial accounts, easily clear this hurdle. *See* CCAC ¶¶ 168, 171–75 (unauthorized transactions on Plaintiff Bowles' bank account and credit card following the Data Breach), 180, 183–87, 192, 195–99 (unknown third party applying for home loan in Plaintiff Ehler's name using her Private Information, following the Data Breach), 204, 207–12, 217, 220–27 (multiple unauthorized transactions on Plaintiff Harris' debit card for which he has not been reimbursed following the Data Breach), 232, 235–41, 246, 249–53, 258, 261–66 (multiple unauthorized charges on Plaintif Piszczor's credit card following the Data Breach), 271, 274–78; *cf. In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1262 (11th Cir. 2021) ("[W]e have no hesitation in holding that Plaintiffs adequately alleged that they face a 'material' and 'substantial' risk of identity theft that satisfies the concreteness and actual-or-imminent elements."). Nothing more is required at this stage of the case.

### D. Plaintiffs Sufficiently State Their Declaratory and Injunctive Relief Claim Against SonicWall.

Defendants' argument to dismiss Plaintiffs' declaratory relief count fails to account for the substantial risk of harm facing Plaintiffs and the Class by Defendants' *current and continued* failure to employ reasonable measures to protect patient PI. CCAC ¶ 26; *see also, e.g.*, ¶ 176. As distinct from Plaintiffs' damages claims, as to the declaratory relief claim Plaintiffs allege they "remain at risk due to Defendants' inadequate data security practices," and because Plaintiffs' PII

remains in Defendants' possession, they seek to "prevent any future data compromise." ¶ 26. Courts in Texas and around the country have found declaratory and injunctive relief appropriate to address this type of forward-looking harm, and that the claim is neither duplicative nor conjectural. *See, e.g.*, *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 415 (E.D. Va. 2020) (plaintiffs' allegations defendant still possessed plaintiffs' PI and its data security measures remained inadequate sufficient to allege declaratory relief claim); *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 913 (N.D. Cal. 2024) (same); (same); *In re: Home Depot, Inc. Customer Data Sec. Breach Litig.,* No. 1:14-md-2588-TWT, 2016 WL 2897520, at *5 (N.D. Ga. May 18, 2016) (same); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 748 F. Supp. 3d 1240 (S.D. Fla. Sept. 18, 2024) (same). Accordingly, Plaintiffs' declaratory judgment claim aimed to remedy SonicWall's current and future data security practices as to Plaintiffs and Class Members should not be dismissed.

## CONCLUSION

For all the above reasons, the Court should deny SonicWall's motion to dismiss in full.

Dated: August 3, 2026

Respectfully submitted,

By: /s/ Jeff Ostrow
Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel: 954-525-4100
ostrow@kolawyers.com

W. Mark Lanier
**LANIER LAW FIRM**
10940 W. Sam Houston Pkwy. N., Suite 100
Houston, TX 77064
Tel: 713-659-5200
mark.lanier@lanierlawfirm.com

Gary M. Klinger
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel.: (866) 252-0878
gklinger@milberg.com

*Interim Co-Lead Class Counsel for Plaintiffs*

Joe Kendall
Texas Bar No. 11260700
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek Blvd., Suite 825
Dallas, Texas 75219
Tel: 214/744-3000
Fax: 214/744-3015
jkendall@kendalllawgroup.com

*Interim Liaison Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that the within document was electronically filed with the clerk of the court on August 3, 2026, and that it is available for viewing and downloading from the Court's ECF system.

*/s/ Jeff Ostrow*
Jeff Ostrow